[Crim. No. 9991. First Dist., Div. One. July 19, 1972.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM FRANCIS SHEEHAN, Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, Robert R. Granucci and Joyce F. Nedde, Deputy Attorneys General, for Plaintiff and Appellant.

Stephen D. Bomes, under appointment by the Court of Appeal, and R. Corbin Houchins for Defendant and Respondent.

## OPINION

**SIMS, J.**—The People have appealed from an order granting the defendant's motion to set aside an information charging him with possession of marijuana in violation of section 11530 of the Health and Safety Code. The motion to set aside, and an accompanying motion to suppress evidence under section 1538.5 of the Penal Code, which was rendered moot by the order on the former motion, were made on the grounds that the marijuana upon which the prosecution was predicated was seized as the result of an illegal search because the description of the place to be searched in the search warrant under which the officers purportedly acted in seizing the marijuana was not set forth with sufficient particularity, and because the information set forth in the affidavit upon which the search warrant was based was obtained as a result of illegal searches. The trial court granted the motion to set aside the information on the latter ground.

The record shows that the contraband in question was seized as a result of a search of the defendant's tent which was one of numerous habitations on a 315-acre ranch. The sheriff's lieutenant who made the affidavit for the search warrant sent an informer on the premises and had gone on the ranch himself on February 21, 1971, to investigate reports that two escaped convicts had taken refuge there. One of the escapees was arrested that day, and on the basis of information obtained from him a further entry on the ranch and search of the residence allegedly occupied by the remaining convict were conducted the following day.

As a result of observations made on the foregoing entries the lieutenant seized and obtained a search warrant to search the entire ranch for marijuana.

In his affidavit in support of the search warrant the lieutenant recounted the circumstances of the searches for the escapees, and the observations of growing and harvesting marijuana which had been made. The latter included a hashish pipe passed between two persons out of approximately 200 persons who were at a party on February 21 around four or five different bonfires. Those persons were singing, clapping, playing musical instruments and drinking wine, to a state of intoxication in some cases. He stated that during the search on February 22, marijuana was observed growing in the residence where the remaining escapee had allegedly been harbored, in two other small structures down the hill from the first, and in a patch of approximately 20 marijuana plants in the same area, not near any structure. He related that another officer who searched the property above the first residence found harvested marijuana in one out of the six structures which he entered in search of the fugitive, and that another deputy in searching to the southeast found paraphernalia used to smoke marijuana in two structures, one of which also contained a jar that appeared to be one-fourth full of marijuana seeds.

The officer further alleged, as an expert, that marijuana and paraphernalia for the use of marijuana is generally found in premises adjacent to where it is grown; that testimony had been given in other legal proceedings that the owner of the land had "allowed and encouraged numerous persons to reside upon the land in a communal life style, open to all except uniformed public officials, and at no cost to the residents"; and that this fact had been highly publicized. He stated that other court proceedings had established that there were substandard structures upon the land,[1] and that in those proceedings it was brought out that in May 1970 there were in excess of 125 communal shacks or tents used for habitation on the premises. A map showing those habitations was attached to the affidavit.

On the basis of the affidavit the magistrate issued a search warrant

---

[1]Exhibit D attached to the affidavit in support of the search warrant was a judgment and permanent injunction issued January 21, 1971, by the Sonoma Superior Court in case No. 62065, People v. William Wheeler. The defendants were ordered, inter alia, to clean up trash and tear down or repair substandard structures on the property. Mr. Wheeler was also ordered to permit inspections of the ranch by officers of Sonoma County, including, but not limited to, the environmental health and building inspection departments, for the purpose of determining whether the injunction had been complied with.

directed to "the premises located and described as 19100 Coleman Valley Road, near Occidental, Sonoma County, California, known as Wheeler Ranch, consisting of approximately 315 acres more or less, together with all structures, tents, lean-tos, and campsites contained within, said description more fully outlined on description in Grant Deed attached hereto and incorporated by reference as if set forth fully herein, and named as Exhibit 'A'." It authorized search "for the following personal property, to wit: Marijuana plants, paraphernalia, and any other items, written or otherwise, tending to show the use and/or cultivation of marijuana."

On March 4, 1971 officers entered the ranch to search for contraband under the warrant, and to seek and apprehend the escapee. The defendant's tent was not mentioned as a place where the officers had seen contraband on the previous visits, nor was there anything to show that there was probable cause to believe that the escapee was harbored there, or that marijuana was being raised in or about the tent.

■ Under the foregoing circumstances it is unnecessary to consider the propriety of the entries under which the information for the affidavit for the search warrant was obtained. (See, however, Pen. Code, § 855; and note *People* v. *Coulon* (1969) 273 Cal.App.2d 148, 155, fn. 8 [78 Cal.Rptr. 95].) There was nothing in the affidavit which would authorize the issuance of a warrant for the search of the habitation occupied by the defendant. In *People* v. *Estrada* (1965) 234 Cal.App.2d 136 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307], this court noted, ". . . when a warrant directs a search of a multiple occupancy apartment house or building, absent a showing of probable cause for searching each unit or for believing that the entire building is a single living unit, the warrant is void and a conviction obtained on evidence seized under it cannot stand. [Citations.]" (234 Cal.App.2d at p. 146, but cf. generally pp. 144-149; and *People* v. *Fitzwater* (1968) 260 Cal.App.2d 478, 485-488 [67 Cal.Rptr. 190].)

On the other hand in *People* v. *Coulon, supra,* 273 Cal.App.2d 148 a divided court upheld a search warrant "commanding search of 'the house, outbuildings, tepees, and campsites at the Old Quadros Ranch in Siskiyou County, as well as the persons in residence there for the following: Marijuana, methedrine, heroin, morphine, mescaline and LSD. . . .' " (273 Cal.App.2d at p. 151), although the ranch consisted of 640 acres. In upholding the validity of the warrant the majority opinion, authored by Justice Friedman, sustained the prosecution's contention "that the activities . . . on the ranch 'indicate a back-to-nature type of com-

munal living' which qualified the entire ranch as a single living unit or household." (*Id., p.* 152.) The opinion concludes: "The affidavits portrayed to the magistrate a single establishment, a large rural property occupied by a house, outbuildings and camps. The camps were separated by space alone, undivided by physical boundaries or the figurative lines of separate tenancies. Of so much the officers were aware. Beyond that, they knew only that a sizeable quantity of narcotics had been delivered at the ranch house and that a group of adults and children inhabited the house and surrounding ranch property. Concerning these people, their familial relationships, their living arrangements, their identification with one area or another of the ranch, their mobility or stability in relation to any particular sleeping and cooking site, the officers knew nothing. There was no reason to assume that the narcotics remained in the ranch house or that the persons who had taken it into the ranch house continued to inhabit that particular structure. Rather, there was probable cause to believe that the contraband, either in bulk or in distributed portions, might be found anywhere on the ranch. To trace the narcotics to compressed spheres of suspicion within the general confines of the ranch would have entailed an elaborate undercover investigation or a self-frustrating giveaway. The entire ranch was suspect." (*Id.,* p. 156. See also *People* v. *Garnett* (1970) 6 Cal.App.3d 280, 284-289 [85 Cal.Rptr. 769].)

In a dissenting opinion, Presiding Justice Pierce pointed out that there was no evidence that the occupants were engaged in communal living or that the whole square mile was "a single establishment"; and that ignorance should not substitute for the necessity "that the officers should have obtained information linking the contraband to each person or place to be searched. . . ." (273 Cal.App.2d at pp. 157-158.) He concluded: "The decision in this case is far-reaching. Six hundred forty acres, besides being a square mile, is also a section of land. In the less populated areas and in the mountains of California there are no doubt thousands of 'Old Quadros Ranches' where people either with the express or tacit permission of the owners hunt, fish, and camp. To the many persons pitching camp on such lands, their camps—under the majority opinion—are no longer their castles." (*Id.,* pp. 158-159.) Although a hearing was denied by the Supreme Court, it is noted that in response to a petition for rehearing in the Court of Appeal, the author of the opinion, as acting presiding justice in the absence of Presiding Justice Pierce, voted for a rehearing.

*Coulon* may be distinguished because, there, unlike this case, there was evidence "six kilos of marijuana, plus methedrine, 'smack,' mescaline and LSD" had been delivered to the ranch and taken in the house on the ranch (273 Cal.App.2d at p. 151). The court found it proper to

infer from the facts that there was probable cause to believe that the contraband might be found anywhere on the ranch. In this case the allegations of the affidavit only indicate quantities for individual use in separate habitations.

The foregoing distinction is rather tenuous when viewed in the light of the fact that the defendant Coulon and his companion were camped 300 yards upstream from the nearest campsite and in a place from which no other inhabited place could be seen. (*Id.*, p. 152.) The views expressed in the dissenting opinion in *Coulon* are more convincing. Ignorance should not substitute for the necessity of particularly describing the place to be searched, and of showing probable cause to believe that there is contraband at that place. The principle recognized in *People* v. *Estrada, supra,* against searching several living units upon a showing of probable cause to search one, applies to the facts revealed in this case.

The order granting the motion to set aside the information is affirmed.

Molinari, P. J., and Elkington, J., concurred.