[Civ. No. 30279. First Dist., Div. Four. Jan. 30, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM E. WHEELER, Defendant and Appellant;
AHIMSA CHURCH, INC., Appellant.

## COUNSEL

Bronson, Bronson & McKinnon, Miles A. Cobb and R. Corbin Houchins for Defendant and Appellant and for Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Edward P. O'Brien, Joyce F. Nedde, Jerome C. Utz and Ina Gyemant, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BRAY, J.**[*]—Appellants[1] appeal from judgment of the Sonoma County Superior Court ordering them, among other matters, to abate certain hazards and to tear down certain structures.

### Questions Presented

1. The Legislature has not preempted the field of defining a public nuisance and therefore the Sonoma County ordinance relied upon by the trial court is not void.

2. There is substantial evidence to support a finding that the conditions on the Wheeler Ranch endanger health and safety.

3. Health and Safety Code section 18897, "organized camp," not applicable.

4. Equitable relief in the form of an injunction is a proper remedy under this fact situation.

5. The demolition order was proper.

6. The injunction is not void for vagueness.

### Record

On April 22 and May 12, 1969, the County of Sonoma obtained from the municipal court of that county warrants for the inspection of the property belonging to defendant Wheeler near Occidental, known as the Wheeler Ranch. As a result of the inspections, violations of the Uniform Building Code, the California Administrative Code, and Sonoma County ordinances were observed. On June 3, 1969, the land was administratively posted as a nuisance, pursuant to section 115(a)-(b) of Sonoma County Ordinance No. 798 as amended by No. 1104. On June 13, claiming failure to abate the conditions found, the Sonoma County District Attorney filed a complaint in the Sonoma County Superior Court to enjoin a public nuisance. The court, after a contested hearing on an order to show cause for a preliminary injunction, on August 5 ordered the issuance of a temporary restraining order and injunction which directed further inspection and maintenance of the status quo on the property. Inspections

---

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]The Ahimsa Church, Inc. filed herein a notice of appeal. The record before us fails to show any appearance by the church in the trial court.

were held, and extensive discovery, pretrial motions and hearings were had, followed by a 20-day trial.

The court filed findings of fact and conclusions of law, which included findings "That the acts in question constituted a nuisance per se by reason of violation of *Sonoma County Ordinances 798 and 1104* [and] That there is actual and impending threat to the enjoyment of life and property arising from threat of epidemic to those living on the land and the community as a whole, as well as structural threat to those residing upon the land."

On that date, a judgment and injunction was also issued, which in essence directed appellant William Wheeler and those acting with him (1) not to live in structures upon the land or reside upon the land (with certain exceptions) unless the structures were brought into compliance with state and county building and health codes and ordinances and deemed not to be a public health hazard and fit for human occupancy by county officials; (2) to clean up and abate certain specific hazards and problems enumerated; (3) to tear down the structures unless existing problems were abated or corrected under permit; and (4) to build no further structures without permits.

Motions to vacate and set aside the judgment were denied. Both appellants William Wheeler and Ahimsa Church appeal.

*Facts*

In Sonoma County, an area with a population of 199,360, there is a ranch of 315 acres, called the Wheeler Ranch and owned by appellant Wheeler. The land in question is between six and eight miles west of the nearest town, Occidental. The life style on the ranch is communal in nature; all people who come to the ranch are welcome to stay. The ranch has over 100 structures or living sites, of which approximately 77 were noted to be occupied. Appellants admit in their opening brief that these structures do not conform to county building and sanitary regulations. Apparently many of the residents of the ranch practice a form of religion that advances the idea of living as close to nature as possible. That is, these residents feel that they cannot practice their beliefs if they are required to live in ordinary structures and not on the open land.

Much of the testimony at the trial was given by officials of the Sonoma County Public Health and Building Departments. It is unnecessary to detail all of the many violations of the applicable codes.[2]

---

[2]The Uniform Building Code adopted by Sonoma County Ordinance No. 798, as amended by Ordinance No. 1104, title 8 of the California Administrative Code, the

The structures on the ranch are of three types: tents, wood frame structures, and canvas or plastic covered shelters. Included in the large number of code violations are the following: lack of permits for all buildings, improper space dimensions, lack of electrical lighting, general dilapidation or improper maintenance, lack of connection to required sewage disposal system, discharge of sewage on the surface of the ground, lack of an approved water supply, lack of adequate foundation, insufficient floor support to carry imposed loads with safety, faulty weather protection; poor weather protection for exterior wall coverings, use of faulty material for construction, improper drainage, lack of proper number of garbage receptacles, etc.

Practically all of the structures on the ranch are substandard. Samples taken of the water supply on the premises showed the water supply was highly contaminated prior to May of 1970, when tests showed the water to be within acceptable ranges. Slides exhibited in court showed much debris, fire hazards caused by stoves placed too close to buildings, holes used as toilets and then improperly covered up.

The structures had common violations which made them substandard (lack of proper water closets, lavatory, bathtub or shower in a dwelling unit; lack of or improper kitchen sink; lack of hot and cold running water to plumbing fixtures; improper heating facilities; lack of minimal amounts of natural light and ventilation; room space dimensions less than required by the California Administrative Code; lack of connection to required sewage disposal system; lack of adequate garbage and rubbish storage and removal facilities; insufficient water supply).

In the July visit to the premises by Mr. Ronald Logsdon, who is employed by the Sonoma County Public Health Department as supervising sanitarian in the division of environmental health, he observed that four chemical toilets had been installed. Mr. Logsdon testified that these toilets are not acceptable substitutes for other methods of private sanitary disposal systems. The toilets were not designed to receive all the waste waters and waste material generated from the dwelling units and were located in an area where during certain times of the year they could not be properly serviced. Mr. 'Logsdon came to the conclusion that the premises should not be occupied because of serious health hazards to the residents of the ranch and that the conditions present on the ranch posed a danger to persons outside the ranch due to the possibility of an outbreak of disease and because the ranch constituted a fire hazard. However, Mr. Logsdon

---

1968 Uniform Building Code, the 1965 National Electric Code, and the 1967 Housing Code.

■■■■■■

testified at the time of the trial that he did not have enough information to determine whether it was still necessary to discontinue occupancy of the Wheeler Ranch in order to safeguard the public health or safety.

Appellant Wheeler had been notified by the different agencies of their findings after the various inspections.

The court determined that none of the 45 or more structures occupied at the time of the trial conformed to Sonoma County Ordinance No. 798, as amended by Sonoma County Ordinance No. 1104, that appellant Wheeler knew he was in violation of these ordinances, and that these violations constitute a nuisance per se. The court further determined that there "is actual and impending threat to the enjoyment of life and property arising from threat of epidemic to those living on the land and the community as a whole, as well as structural threat to those residing upon the land." The court found that, since a large number of persons on the ranch were highly mobile and transitory, an equitable injunction was the only effective remedy. The court decided "[t]hat those members of the Ahimsa Church who reside at and claim to utilize the defendant's land as a place of worship are not unreasonably precluded from practice of religion by enforcement of *Sonoma County Ordinance 798,* as amended by *Sonoma County Ordinance 1104* as applied."

1. *The Legislature has not preempted the field.*

Appellants argue that the trial court based its finding that the conditions on the Wheeler Ranch constituted a nuisance on section 115(b) of Sonoma County Ordinance No. 798, as amended by Ordinance No. 1104, which provides that "Every violation of the regulatory provisions of this Ordinance is hereby declared to be a public nuisance and the District Attorney of the County of Sonoma shall take such action as he may deem necessary to abate the same." Appellants contend that it was error to base a judgment on this provision because the Legislature has preempted the field of defining a nuisance.

Section 111 of Sonoma County Ordinace No. 798, as amended by Ordinance No. 1104, adopted and incorporated modified versions of the 1967 Uniform Building Code, Uniform Mechanical Code, Uniform Building Code (Housing), 1967 Uniform Building Code Standards, 1965 Uniform Electrical Code, and 1967 Uniform Plumbing Code. However, section 17922 of the Health and Safety Code adopts the 1970 edition of the above mentioned uniform codes. The National Electrical Code is adopted in its 1968 edition to govern buildings intended for human habitation.

Appellants are arguing that since the Legislature has adopted a definition of public nuisance with respect to buildings intended for human habitation (3 Uniform Bldg. Code (1970 ed.) § H-202, and 3 Uniform Bldg. Code (1970 ed.) § H-1001), the Legislature has preempted the field and that the provision of the Sonoma County ordinance relied upon by the trial court is, therefore, void.

The California Constitution, article XI, section 7, provides that "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." It is true that whenever the Legislature has adopted a general scheme for the regulation of a particular subject, a local ordinance is invalid if it attempts to regulate the same subject matter. (*Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859 [76 Cal.Rptr. 642, 452 P.2d 930].) "In determining whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, we may look to the 'whole purpose and scope of the legislative scheme' and are not required to find such an intent solely in the language used in the statute. [Citations.]" (*In re Lane* (1962) 58 Cal.2d 99, 102-103 [22 Cal.Rptr. 857, 372 P.2d 897].)

In *City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93, 100-101 [48 Cal.Rptr. 889, 410 P.2d 393] (cert. den. 384 U.S. 988 [16 L.Ed.2d 1005, 86 S.Ct. 1890]), appellant also contended that state housing requirements had preempted the field of regulation. The Supreme Court stated that this contention was without merit, based on the ground that section 17951 of the Health and Safety Code specifically provided that a city or county may impose standards which equal or exceed the state regulations. It was not possible for a local ordinance to conflict with a state regulation because section 19825 of the Health and Safety Code provided that state statutes shall be inapplicable when local governments adopt such ordinances.

At the time of the decision in *City of Bakersfield,* Health and Safety Code, section 17951 (Housing Code), provided, in part, as follows: "The governing body of any city or county may *enact ordinances or regulations imposing restrictions equal to or greater than those imposed by this part and the rules and regulations promulgated pursuant thereto or prescribing* fees or permits, . . ." Section 17951 was amended in 1970 by substituting "prescribe" for the language italicized above.

Section 17958 of the Health and Safety Code provides: "The governing body of every city or county shall adopt ordinances or regulations imposing the same requirements as are contained in the regulations adopted pursuant to Section 17922 within one year after the effective date of this section. If any city or county does not adopt such ordinances or regulations, the

provisions of this part and the rules and regulations promulgated thereunder shall be applicable within one year after the effective date of this section."

Section 17958.5 of the Health and Safety Code provides: "In adopting the ordinances or regulations pursuant to Section 17958, a city or county may make such changes or modifications in the requirements contained in regulations adopted pursuant to Section 17922 as it determines are reasonably necessary because of local conditions."

From a reading of these two above-quoted code sections, it would appear that a local government could not adopt any regulations that differ from those contained in section 17922 of the Health and Safety Code unless such government determines that changes or modifications are necessary because of local conditions. No such determination appears in the Sonoma County ordinance in question in this case. However, section 17958.7 seems to resolve any confusion there may be as to the validity of local ordinances that were adopted before the effective date of this code section. Section 17958.7 of the Health and Safety Code provides: "The governing body of a city or county before making any modifications or changes pursuant to Section 17958.5 shall make an express finding that such modifications or changes are needed. Such a finding shall be available as a public record and a copy, together with the modification or change, filed with the department. *Nothing contained in this part shall be construed to require the governing body of any city or county to alter in any way building regulations enacted on or before the effective date of this section.*" (Italics added.)

In order to give meaning to the last sentence of section 17958.7, "it seems reasonable to conclude that the provision of section 17958 imposing state regulations upon cities and counties failing to adopt regulations imposing similar requirements by a prescribed time has a limited application." (54 Ops.Cal.Atty.Gen. (1971) 87, 88.) ■ That is, section 17958 only applies to building activities not already regulated by existing city or county ordinances. Rules of statutory construction state that every word, phrase, or provision is deemed to have been intended to have a meaning and perform a useful function. (*Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].)

The legislative intent in enacting the above-quoted code sections was expressed in chapter 1436, section 7, of the 1970 Statutes, as follows: "The Legislature hereby finds and declares that the uniformity of codes throughout the State of California is a matter of statewide interest and concern since it would reduce housing costs and increase the efficiency of private housing construction industry and its production.

"Uniformity can be achieved within a framework of local autonomy, by allowing local governments to adopt changes making modifications in such codes based on differences in local conditions, but requiring express findings as reasons for those changes, which would serve as a deterrent to the excessive adoption of changes or modifications.

"Thus, such uniformity, by bringing about such reduction of costs and increase of efficiency, would substantially help to meet the housing needs within this state."

It is true that limiting the application of section 17958 would reduce the degree of uniformity of codes throughout the state, but it appears from the expressed legislative intent and section 17958.5, permitting differences in regulations based on local conditions, that the Legislature was not seeking complete or total uniformity.

■ Thus, since Sonoma County Ordinance No. 798, as amended by Ordinance No. 1104, was in existence at the time section 17958.7 was enacted, it is not void. At the time that this ordinance was adopted, section 17951 permitted local ordinances to impose restrictions equal to or greater than those imposed by the state. Section 17958.7 states that nothing contained in the above-quoted statutes shall be construed so as to require local governments to alter or modify existing building regulations.

Appellants then proceed to argue that even if the Sonoma County definition of "nuisance" was valid at the time the judgment was entered, the subsequent amendment of the State Housing Law invalidated the county's definition. It is rather difficult to comprehend actually what appellants are arguing, because the most recent amendments to the State Housing Law (Health & Saf. Code, §§ 17910-17995) were effective November 23, 1970, prior to the filing of the judgment and permanent injunction in this case, January 21, 1971. Thus, either the Sonoma County definition of a nuisance was valid at the time the judgment was entered or the Legislature had preempted that definition as of November 23, 1970. Appellants do not point to any specific amendments in the State Housing Law that have been enacted since the entry of the judgment in this case other than those already mentioned in this discussion. It therefore appears that this argument is without merit.

The Legislature has not preempted the field of defining a public nuisance when there is any existing local ordinance which also defines a nuisance.

2. *The conditions on the Wheeler Ranch endanger health and safety.*

Appellants assert that the trial court made no finding that the conditions on the ranch were a danger to health and safety. Appellants contend that

the trial court based its judgment solely on the fact that the Sonoma County ordinance had been violated. Appellants admit that there is substantial evidence to support the finding by the lower court that the conditions on the ranch violated county building and sanitary regulations. Appellants are incorrect when they state that the trial court made no finding that the situation on the Wheeler property constituted a danger to health and safety. Finding number 9 of the trial court reads as follows: "That there is actual and impending threat to the enjoyment of life and property arising from threat of epidemic to those living on the land and the community as a whole, as well as structural threat to those residing upon the land."

"When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].)

Appellants admit that the evidence could have supported a finding that violations of the health regulations constituted a health and safety hazard in July of 1969, but assert these conditions had been substantially abated by the time of trial. Appellants mainly rely on the fact that the water was no longer contaminated, that four chemical toilets had been installed, that the dump had been burned which much improved the unsanitary conditions caused by the dump, and that the fire hazard caused by dry vegetation and close proximity of the stoves to the buildings could be readily abated. However, appellants fail to point out how the common violations shown by the testimony, which made the structures substandard, had been abated nor does the evidence at the trial indicate that these violations had been corrected. ■ Thus, the trial court's finding that the conditions on the Wheeler Ranch constituted a danger to health and safety could be based on lack of or improper water closets, lavatory, bathtub or shower in a dwelling unit, lack of or improper kitchen sink, lack of hot and cold running water to plumbing fixtures, improper heating facilities, lack of minimal amounts of natural light and ventilation, room space dimensions less than required by code, inadequate foundations, improper load capacity, inadequate ceiling supports, faulty weather proofing, lack of connection to required sewage disposal system, and lack of adequate garbage and rubbish storage and removal facilities. Mr. Logsdon further testified that he did not feel that the four chemical toilets were acceptable substitutes for other methods of private sanitary disposal systems because they were not designed to receive all the waste material generated from the

dwelling units and because they were located in an area where during certain times of the year they could not be properly serviced.

### 3. *The "organized camp" statute not applicable.*

Appellants contend that Health and Safety Code section 18897, "organized camp," and California Administrative Code, title 17, sections 30700-30751, establishing minimum standards necessary to protect the health and safety of campers, provide, in effect, that the Legislature has determined that conformity with local building codes is not necessary from the standpoint of public health and safety, and that the substandard conditions shown by the evidence in this case are conditions which would be permitted in an "organized camp."

Appellants do not contend that the Wheeler Ranch operation is an "organized camp" as defined in the statute but do contend that some of the conditions herein set forth would be permitted in an "organized camp" and hence cannot alone support a finding of danger to health and safety.[3]

The trial court found and we point out in this opinion that in addition to the violations of the Sonoma County ordinances there were violations of the California Administrative Code. Many of the violations are not only county and state code violations but additionally would be violations of "organized camp" regulations.

Appellants indicate without authority that certain tents, tent structures and buildings of less than certain lateral dimensions and height are expressly excluded from conforming to design and construction limitations. On the contrary, tents and tent structures and buildings are specifically included in the application of section 30721 of the California Administrative Code (minimum floor space per person for sleeping accommodations) and section 30722 of the California Administrative Code requires that tents and all structures be in good repair and in a safe and sanitary condition satisfactory to the local enforcing agency. Section 30700 provides that the local health officer is the enforcing agency. Ronald Logsdon, a local health officer, testified that the conditions on the ranch were a serious health hazard to residents on the ranch and were a danger to those outside because of possible outbreak of disease and fire hazard. Logsdon's testimony alone is sufficient to support the trial court's judgment even though two building inspectors confined their testimony to code infractions and

---

[3]There is no evidence that appellants complied with the requirement of section 30703 of the California Administrative Code, which requires that 30 days prior to the operation of an "organized camp" written notice be sent to the county health officer of intention to operate such camp.

declined to comment on the health situation as being outside their jurisdiction.

■ As appellant's premises are not an "organized camp," the provisions of section 18897 and of title 17 of the California Administrative Code do not apply, and as we stated, if they did, violations found by the trial court are substantial evidence of danger to health and safety.

*4. Equitable relief in the form of an injunction is a proper remedy.*

Appellants argue that, absent a finding that the violations in question here constitute a danger to health or safety, equity should not enjoin the activity because the violations can form the basis for a criminal prosecution in Sonoma County under the Sonoma County ordinance. Section 115(a) of Sonoma County Ordinance No. 798, as amended by Ordinance No. 1104, provides: "Every violation of the regulatory provisions of this Ordinance is declared to be a misdemeanor." However, section 115(b) provides: "Every violation of the regulatory provisions of this Ordinance is hereby declared to be a public nuisance and the District Attorney of the County of Sonoma shall take such action as he may deem necessary to abate the same." Since this ordinance has not been preempted, the district attorney had the alternative of attempting to abate the nuisance by bringing a criminal action or by proceeding in equity. In *Donovan* v. *City of Santa Monica* (1948) 88 Cal.App.2d 386, 397 [199 P.2d 51], the court held that the City of Santa Monica could obtain an injunction against one of its residents for a violation of a city zoning ordinance even though the city ordinance provided for a criminal penalty.

Furthermore, the trial court found that threat to the health of the community was posed by the conditions present on the Wheeler Ranch. As such, the conditions would fall within the definition of a nuisance and/or a public nuisance as defined in Civil Code sections 3479 and 3480. Section 731 of the Code of Civil Procedure specifically provides that under these circumstances a district attorney of any county may bring an action to abate the nuisance. (See *City of Bakersfield* v. *Miller, supra,* 64 Cal.2d 93, 100.) "If the criminal act is a *public nuisance,* either under the general statutory definition (C.C. 3479) or by special statutory provision, it may be enjoined. (See C.C. 3369. . . .)" (2 Witkin Cal. Procedure (2d ed. 1970) Provisional Remedies, § 67, p. 1508.)

Section 26528 of the Government Code provides: "The district attorney may, and when directed by the board of supervisors shall bring a civil action in the name of the people of the State of California to abate a public nuisance in his county." Sections 17980-17982 of the Health and

Safety Code also provide that an enforcement agency may apply to the superior court for an order removing any violation contained in that part of the Health and Safety Code or abate any nuisance.

■ It is, therefore, clear that the District Attorney of Soncma County had ample authority to bring this action to abate the conditions present on the Wheeler Ranch.

### 5. *The demolition order was proper.*

Appellants cite a number of cases which they allege stand for the proposition that demolition will be ordered only when an extreme present threat to health or safety is posed by a structure. In many of the cases which appellants cite the order was simply that the building be vacated and demolished without giving the appellants the option of attempting to bring the building within code standards (e.g., *Perepletchikoff* v. *City of Los Angeles* (1959) 174 Cal.App.2d 697 [345 P.2d 261]; *Takata* v. *City of Los Angeles* (1960) 184 Cal.App.2d 154 [7 Cal.Rptr. 516]). In this case, the trial court gave the appellants the alternative of either bringing the structures within code standards or demolishing the buildings. Furthermore, several of the cases appellants cite deal with the issue whether a building may be ordered demolished if, when constructed, it met the standards then existing (e.g., *Perepletchikoff* v. *City of Los Angeles, supra; Takata* v. *City of Los Angeles, supra; Knapp* v. *City of Newport Beach* (1960) 186 Cal.App.2d 669 [9 Cal.Rptr. 90]). Here the buildings when constructed did not meet the standards set out in the building code. *Perepletchikoff* v. *City of Los Angeles, supra,* at page 707, indicates that when a building is constructed in defiance of an ordinance, a lesser showing of danger to health and safety need be shown than when the building was erected according to the then existing standards and later becomes unsafe.

*Stoetzner* v. *City of Los Angeles* (1959) 170 Cal.App.2d 394, 396 [338 P.2d 971], states: "No argument or citation of authorities is needed for the proposition . . . that . . . a nuisance may be ordered abated by the demolition of the offending structure if the nuisance which it creates cannot be otherwise abated." Only after appellants had chosen not to bring the buildings up to ccde standards were the buildings to be demolished. The trial court could not force appellants to correct the dangerous conditions on the property. ■ However, the trial court had the power to abate the nuisance, and this included the power to order the buildings demolished if the nuisance was not otherwise abated. To hold that the trial court did not have the power to order that the buildings be demolished would

be to say that the court has the power to abate a nuisance, but it does not have the power to enforce the order of abatement.

*Leppo* v. *City of Petaluma* (1971) 20 Cal.App.3d 711 [97 Cal.Rptr. 840], cited by appellants, is not in point. There the only question involved was whether the landowner had been afforded a due process hearing in connection with the demolition order. That question is not raised in the instant case. The court's statement that the building to be demolished must be an *immediate* hazard and danger to the public applies only to emergency situations where the city may act summarily to abate the nuisance without court proceeding. Here, the County of Sonoma is not acting summarily but through due process.

### 6. *The judgment is not vague.*

It was held in *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 534 [67 Cal.Rptr. 761, 539 P.2d 889], that an injunction must not be uncertain or ambiguous and the defendant must be able to determine from the order what he may and may not do. ■ However, in determining whether the defendant has been given sufficient notice of the conduct proscribed or compelled, the language of the injunction must be interpreted in light of the record which discloses the kind of conduct that is sought to be enjoined.

Appellants contend that the judgment is vague in that they are unable to determine who decides that the structures have become fit for human occupancy. It is clear from reading the judgment that the buildings are to be inspected by the Sonoma County Building Department.

Appellants next contend that the judgment is void for vagueness because subsection (b) on page two of the judgment has the additional phrase, "or until the property is determined by the Sonoma County Health Officer not to be a public health hazard," and appellants are unable to determine whether such clearance by the county health officer may be relied upon as the exclusive means of compliance. From reading subsections (a) and (b) together, it is clear that subsection (a) is dealing only with the structures on the land and that subsection (b) is dealing with both the structures and the open land on the Wheeler Ranch. Subsection (b) states that no person may reside in any structure until it has been approved by the Sonoma County Building Department or remain on the open property until the property is determined by the Sonoma County Health Officer not to be a public health hazard. Thus, the judgment is not void for vagueness.

■ At argument, appellants sought leave to raise a contention additional to those set forth in their briefs, namely that the inspection warrant of April 22, 1969, which authorized inspection of the entire ranch for the purpose of determining the existence of non-code structures and compliance with health codes, described the places to be searched with insufficient particularity under the Fourth Amendment to the United States Constitution and article I, section 19, of the California Constitution, and Code of Civil Procedure sections 1822.51 and 1822.54. ■ Inasmuch as this contention was made in the trial court, although not on appeal, such permission is granted.

The trial court in ruling that the warrant was not overbroad and contained sufficient particularity to meet constitutional requirements, cited *People* v. *Coulon* (1969) 273 Cal.App.2d 148 [78 Cal.Rptr. 95], where the court held: "[T]he requirement of particularity is met if the description is such that the searching officers can, with reasonable effort, ascertain and identify the place intended. In the case of dwellings, the 'place' is usually a single living unit, that is, the residence of one person or family; a warrant directing a search of an apartment house or dwelling place containing multiple living units is void unless issued on probable cause for searching each separate living unit or believing that the entire place is a single living unit; a group of adults, nevertheless, may share a single dwelling unit as a common residence, and a warrant describing that unit as the 'place' to be searched is constitutionally adequate." (*Id.* at p. 152.)

Appellants' contention now is that in *People* v. *Sheehan* (1972) 28 Cal. App.3d 21 [103 Cal.Rptr. 201], the court criticized *Coulon* and, so far as the facts of the present case are concerned, eliminated it as authority for admission of the challenged evidence. However, an examination of the two cases shows that they were dealing with two separate fact situations and that *Coulon* in no way is inapplicable to the facts of the case at bench.

In *Coulon,* a warrant was issued directed to an entire ranch to search for "six kilos of marijuana, plus methedrine, 'smack,' mescaline and LSD" which had been delivered to the ranch (273 Cal.App.2d at p. 151). The court found that the activities on the ranch qualified the entire ranch as a single living unit or household (*id.* at p. 152) and that the quantity of contraband believed to be there might be found anywhere on the ranch (*id.* at p. 156).

In *Sheehan,* the affidavit for the warrant was based upon an officer's observation that two of 200 persons at a party on a 315-acre ranch were smoking a hashish pipe and that marijuana was observed growing in four

patches in one area. There were in excess of 125 communal shacks or tents used for habitation on the premises. The warrant was directed to the 315-acre ranch, describing its location, "together with all structures, tents, lean-tos and campsites" on it, and authorized search for "Marijuana plants, paraphernalia, and any other items, written or otherwise, tending to show the use and/or cultivation of marijuana." The defendants were charged with possession of two marijuana cigarettes. The court distinguished *Coulon* and then decided that the place to be searched was not particularly described and that several living units should not, as in the *Coulon* case, be searched upon a showing of probable cause to search one.

*Sheehan* and *Coulon* are easily distinguishable from the instant case. They involved a search for specific contraband. A search for specific contraband goods, even with a warrant, is " 'reasonable' only when there is 'probable cause' to believe that it will be uncovered in a particular dwelling." (*Camara* v. *Municipal Court* (1967) 387 U.S. 523, 535 [18 L.Ed.2d 930, 939, 87 S.Ct. 1727].)

■ Here the inspection at issue was to determine if there was compliance with minimum physical standards for private property and this required an inspection of all structures on the property as well as the property itself.

In *Camara* v. *Municipal Court, supra,* 387 U.S. 523, at page 538 [18 L.Ed.2d at pages 940-941], the court quoted from 359 U.S. at page 383 [3 L.Ed.2d at page 891]: " 'Where considerations of health and safety are involved, the facts that would justify an inference of "probable cause" to make an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken. . . . The test of "probable cause" required by the Fourth Amendment can take into account the nature of the search that is being sought.' "

The court went on to say (387 U.S. at p. 538 [18 L.Ed.2d at p. 941]): "Having concluded that the area inspection is a 'reasonable' search of private property within the meaning of the Fourth Amendment, it is obvious that 'probable cause' to issue a warrant to inspect must exist if *reasonable* legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g., a multi-family apartment house), or the condition of the entire area, *but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling."* (Italics added.)

The legislative standards of the Code of Civil Procedure section 1822.50 et seq., were met in the instant case. Section 1822.51 provides that an inspection warrant shall be issued only upon "cause, supported by affidavit, particularly describing the place . . . to be searched. . . ." In the instant case the place was described as 19100 Coleman Valley Road used as the residence of William and Sarah Wheeler and other structures. Ten photos of the other structures were attached as exhibits. The photos also depicted violations of the code. Requests for permission to inspect were also attached.

*Camara* v. *Municipal Court* is authoritative. The affidavit for the warrant in the instant case showed that the Wheeler Ranch and all its structures and tents were in violation of the building and health codes and should be inspected, and the warrant specifically described the land and structures to be inspected.

Judgment affirmed.

Devine, P. J., and Rattigan, J., concurred.

The petition of all the appellants for a hearing by the Supreme Court was denied March 29, 1973.