[Crim. No. 4520. Fifth Dist. Apr. 30, 1981.]

THE PEOPLE, Plaintiff and Appellant, v.
LAURENT ANTOINE JOUBERT et al., Defendants and
Respondents.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Thomas R. Yanger, Deputy Attorneys General, for Plaintiff and Appellant.

Lester J. Gendron, Public Defender, Cowin, Johnson, Brewer, Tibbs & Kinney, Cowin, Johnson & Brewer, Jack D. Johnson and Craig D. Trippel for Defendants and Respondents.

OPINION

**FRANSON, Acting P. J.**—The People appeal from a judgment dismissing criminal charges against respondents following the granting of a motion to suppress evidence obtained pursuant to a search warrant.

Probable cause for the warrant was based on an aerial surveillance of respondents' land by Madera County law enforcement officers using binoculars to identify a marijuana garden. The trial court granted respondents' motion to suppress on the theory that the officers' use of binoculars during the aerial surveillance constituted an unreasonable search under the authority of *People v. Arno* (1979) 90 Cal.App.3d 505 [153 Cal.Rptr. 624].

As we shall explain, *Arno* does not compel such a result; we conclude that optically aided aerial surveillances of marijuana patches growing in open fields is constitutionally permissible today. Granting the suppression motion on that basis was error.

We then consider respondents' alternate argument that misrepresentations and omissions in the affidavit supporting the search warrant invalidate the warrant under *Theodor v. Superior Court* (1972) 8 Cal. 3d 77 [104 Cal.Rptr. 226, 501 P.2d 234] and *People v. Cook* (1978) 22 Cal.3d 67 [148 Cal.Rptr. 605, 583 P.2d 130]. We conclude that respondents should be given an opportunity to litigate this issue in the superior court and accordingly remand the matter for further proceedings.

THE EVIDENCE[1]

Madera County Deputy Sheriff Albert Hahn, having heard rumors that marijuana was being cultivated on a particular rural parcel of land in Madera County, decided to conduct an aerial surveillance to confirm the rumors. Hahn checked at the assessor's office to determine the boundaries of the parcel under suspicion. At the assessor's office he obtained a map of the subject 29-acre parcel, determined that its address was 39900 Road 800, and discovered that it was owned by John and Christina Reed (whom the officer also knew as Christina Joubert).

Hahn arranged for Officer Smith of the California Highway Patrol to serve as pilot. The overflight was conducted on August 24, 1978. Before takeoff, Officer Hahn instructed the pilot that the plane should be flown at an elevation of at least 500 feet. Hahn testified that the airplane did remain above that elevation during the flight. The plane circled the periphery of the subject parcel about 15 to 25 times without flying directly over it.

---

[1]This summary of the evidence is derived from the preliminary hearing transcript which was considered by the superior court judge in ruling on the suppression motion. No additional evidence was offered at the superior court hearing.

From that height and distance, Hahn was able to see on the subject parcel a circular-shaped cultivated area approximately 50 feet in diameter. By using "seventeen power" binoculars, the officer was able to see characteristics of the cultivated plants which led him to conclude that they were marijuana. Hahn testified that the type of binoculars he used give a view from 1,000 feet which is equivalent to seeing from a distance of 75 feet with only the naked eye.

Hahn testified that this circular patch was the only place on the 29-acre parcel where he saw something he suspected was marijuana.

Officer Smith, the pilot, also testified regarding his observations during the flight. Smith said that during the time the plane was circling the subject property, it never dropped to an elevation less than 800 feet above the ground. Smith had been advised by Hahn to watch the elevation and keep above 500 feet.[2] However, when studying a map on the morning of the preliminary hearing, Smith figured out that the plane had actually been flying at an elevation of 1,000-1,100 feet. Smith also gave some confusing testimony as to the horizontal distance between the plane and the marijuana garden under observation.

Evidence was also adduced concerning the number of roads and buildings in the vicinity of the marijuana garden. This evidence was introduced to support an attack on the search warrant on the ground that it was overly broad in specifying that the entire 29-acre parcel and buildings thereon could be searched. Officer Smith testified there was more than one building on the parcel in question. Some outbuildings resembling barns were near one "predominant house." This house was the focus of particular attention during the overflight, but there were also several other buildings in the vicinity. There was also evidence to show that the area was about to be subdivided and that some work had been started on the roads. Officer Hahn testified there were "numerous roads" in the area.

A search warrant for the subject parcel and all buildings thereon was issued in response to an affidavit filed by Officer Hahn the day after the overflight described above.

On August 30, 1978, the search warrant was executed. The officers seized about 100 marijuana plants found growing on the circular field

[2]There is an FAA regulation forbidding flights over dwelling houses at less than 500 feet.

which had been seen from the air. They also seized over 150 marijuana plants from gardens at various other locations on the property. The relationship among the various marijuana growing sites was as follows. The circular garden containing 100 marijuana plants was located approximately 15 feet from a house trailer where respondent Vanderpool was seen during execution of the warrant. There was a footpath from that trailer to the circular garden. Approximately 75 yards from that garden was a cabin where there were 2 more marijuana patches: 1 containing 54 plants and the other containing 82 plants. A third structure which appeared to be a house under construction was located about 400 yards from the circular garden. Just a few feet away from this house there was a fenced in area containing rose bushes as well as about 39 marijuana plants. Near this garden were two bags of fertilizer which were seized, and then later returned to respondent Christina Joubert at her request.

### The Binocular Aided Aerial Surveillance Was Lawful

■ In *People* v. *Edwards* (1969) 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], the California Supreme Court applied the *Katz*[3] doctrine that the Fourth Amendment protects people, not places by holding that the appropriate test for determining whether a warrantless search of open fields violates the Fourth Amendment is whether the land possessor has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion. (*People* v. *Edwards, supra*, 71 Cal.2d at pp. 1100, 1103.) The test of reasonableness is dependent upon the totality of facts and circumstances of each case (*North* v. *Superior Court* (1972) 8 Cal.3d 301, 308-312 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R. 3d 155]).

The premier California case on optically aided aerial surveillance of marijuana cultivation is *Dean* v. *Superior Court* (1973) 35 Cal.App.3d 112 [110 Cal.Rptr. 585], where the Court of Appeal, speaking through Justice Friedman, upheld a binocular surveillance of the defendant's marijuana field. An anonymous letter had tipped off the authorities to the possibility of commercial marijuana cultivation in an isolated area of the Sierra foothills hidden from view by the surrounding hills and woods. The county sheriff dispatched an airplane and a binocular equipped deputy to the general area indicated by the informant. On its

---

[3]*Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507].

first "pass" the plane flew at an altitude of 700 feet. Among the trees the deputy saw a sizeable green patch. Flying over the patch a second time at an altitude of 400 to 500 feet, the deputy formed the belief that the patch was a field of growing marijuana. The plane then dropped to an altitude of 300 feet and the officer used his binoculars to discern the leaves' shape and their growth pattern in clusters of 5, typical of marijuana (*id.*, at p. 114).

*Dean* first acknowledged that a property holder may have a Fourth Amendment right of privacy in the air corridor above his land. "Expectations of privacy are not earthbound. The Fourth Amendment guards the privacy of human activity from aerial no less than terrestrial invasion. . . . Reasonable expectations of privacy may ascend into the airspace and claim Fourth Amendment protection." (*Id.*, at p. 116.)

*Dean* then held that "mankind's common habits in the use of domestic and business property supply a prime measure of the reasonableness of expectations of privacy." (*Id.*, at p. 117.) "One who builds a swimming pool and sun-bathing area in his backyard expects privacy (hence immunity) from aerial inspection. Areas reasonably used in ordinary business operations are assumedly entitled to similar immunity. Such areas are expectedly private according to the common habits of mankind." (*Ibid.*)

However: "One who establishes a three-quarter-acre tract of cultivation surrounded by forests exhibits no reasonable expectation of immunity from overflight. The contraband character of his crop doubtless arouses an internal, uncommunicated need for secrecy; the need is not exhibited, entirely subjective, highly personalized, and not consistent with the common habits of mankind in the use of agricultural and woodland areas. Aside from an uncommunicated need to hide his clandestine activity, the occupant exhibits no reasonable expectation of privacy consistent with the common habits of persons engaged in agriculture. The aerial overflights which revealed petitioner's open marijuana field did not violate Fourth Amendment restrictions." (*Id.*, at pp. 117-118, fn. omitted.)

In *Burkholder* v. *Superior Court* (1979) 96 Cal.App.3d 421 [158 Cal.Rptr. 86], a sheriff's deputy observed what he believed to be a marijuana patch situated in a heavily wooded, mountainous area on property leased by the defendant, while the deputy was flying over the property at an altitude of approximately 1,500 feet. The deputy's view

of the patch of vegetation was aided by the use of binoculars. Recognizing that the basic test to be applied in determining the nature of the right of privacy protected under the Fourth Amendment and the California Constitution is whether the defendant has exhibited a subjective expectation of privacy which is objectively reasonable, the court adopted the *Dean* rationale that a possessor of land devoted to the cultivation of contraband can exhibit no reasonable expectation of privacy from aerial surveillance provided the overflight is at a reasonable and lawful altitude. (*Id.,* at pp. 425-426.)

Nor did the fact that the officer's observations were optically aided compel a contrary conclusion in *Burkholder.* Although the evidence revealed that the cultivated patch was visible to the naked eye and the evidence reasonably supported an inference that the patch was marijuana, the court held ". . . the determinative factor is whether a reasonable expectation of privacy existed entitling the claimant to be free from clandestine surveillance, whether by natural *or* artificial means." (*Id.,* at p. 426, italics in original.) Quoting from *People* v. *Arno, supra,* 90 Cal.App.3d 505, 512, *Burkholder* states "'. . . if the purpose of the optically aided view is to permit clandestine police surveillance of that which could be seen from a more obvious vantage point without the optical aid, there is no unconstitutional intrusion; . . .'" (*Burkholder, supra,* 96 Cal.App.3d at p. 426.) It appears that the court in *Burkholder* concluded (and perhaps the courts in other aerial search cases as well) that the marijuana plants were identifiable with the naked eye at a lower altitude, a "more obvious vantage point." (*Ibid.*)

The most recent published decision involving optically aided aerial discovery of marijuana cultivation is *People* v. *St. Amour* (1980) 104 Cal.App.3d 886 [163 Cal.Rptr. 187] (hg. den.). In that case, county sheriffs conducting an aerial surveillance for marijuana gardens observed in plain view from an altitude of 4,000 to 5,000 feet what they thought was a marijuana garden. The plants were several feet tall. The officer believed the plants were marijuana because of the "distinct green color which becomes easier to observe when contrasting colors surround it. It also has a distinct configuration." The officers believed the plants were marijuana but were not positive (*id.,* at p. 889).

The plane circled the area and one officer used ordinary and then gyrobinoculars from 1,000 or 1,500 feet to examine the garden. The

gyrobinoculars stabilized the view, eliminating the effect of the plane's movement and vibration to facilitate the observations. The officers verified that the garden was marijuana growing on about one-quarter of an acre. The garden was on the side of a mountain slope in a deserted area. The nearest town was a mile and a half away. No business or other human activity was observable from the air.

In upholding the aerial surveillance, the court stated: "While the constitutional privilege of protecting one's privacy covers not only the ground, but may extend also into the airspace, it is absolutely essential that the person affected exhibit a reasonable expectation (as opposed to mere subjective, personal desire) that the activity in question be so protected. The reasonable expectation to protect the airspace overlying the land, however, cannot be demonstrated by measures taken to defend the land from earthly intrusions (e.g., by setting up a road block, trespass signs or by hiding the area or activity from ground observations). Rather the individual seeking constitutional safeguards must show that the land is used in accordance with the common habits of people engaged in the cultivation of agricultural land who exhibit an expectation of privacy with respect to the pursuit in question." (*Id.*, at p. 891.)

In reaching its conclusions, *St. Amour* adopted the reasoning of *Dean* and *Burkholder* that "[o]ne who establishes a...tract of cultivation surrounded by forests exhibits no reasonable expectation of immunity from overflight" (*St. Amour* at p. 892, quoting from *Dean v. Superior Court, supra*, 35 Cal.App.3d at p. 117) and "'a possessor of land devoted to the cultivation of contraband can exhibit no reasonable expectation of privacy from an overflight consistent with the common habits of persons engaged in agrarian pursuits,'" (*St. Amour* at p. 893, quoting from *Burkholder v. Superior Court, supra*, 96 Cal.App.3d at p. 425).

The Supreme Court of Hawaii has also spoken on the subject of optically aided overflights of marijuana patches. In *State v. Stachler* (1977) 58 Hawaii 412 [570 P.2d 1323], the defendant had leased about four acres of land in a sparsely populated and relatively remote area of the Island of Hawaii. The property was adjacent to a forest reserve just below a high ridge and was surrounded by abandoned coffee farms and numerous fruit and nut trees. The defendant's land could not be seen from the nearest public road, nor from neighboring property, and one

had to pass through a locked gate and travel up an unimproved road to get to the house. As the police helicopter flew over the defendant's land, an officer using binoculars observed a marijuana patch about 15 feet "south of the [defendant's] house." The helicopter was at an elevation of around 300 feet throughout the surveillance. (*Id.*, at p. 1325.)

In upholding the constitutionality of the aerial observation, the court noted that the helicopter was flying at a lawful and reasonable height so that the officer had a right to be where he was at the time of the aerial observation (*id.*, at p. 1327); it then applied the *Dean* rationale that one who farms marijuana should be in no better position than one who farms a lawful crop insofar as the constitutional right of privacy. "If defendant had been engaged in growing taro, sweet potato or banana, surely he would not have a reasonable expectation of privacy as to his crop from aerial observation. And, society as a whole would not find such an expectation of privacy objectively reasonable according to the common habits of mankind." (*Id.*, at p. 1328.) The court concluded that since the defendant did not have a reasonable expectation of privacy from aerial observation conducted at a reasonable height as to his open marijuana patch, it followed that the helicopter surveillance was not a search in the constitutional sense.

We glean from these cases two overriding principles: first, although police officers conducting overflights have demonstrated a rather remarkable visual capability in spotting marijuana gardens, the plants cannot truly be identified as marijuana at reasonable altitudes without the aid of binoculars; second, a binocular aided aerial examination from a lawful altitude does not infringe on a property holder's constitutional right of privacy; the courts consistently have refused to recognize a right to be free from such intrusion. Thus, anyone who grows marijuana in the open today does so at the risk of being spotted by flying police officers. Only by growing the marijuana in a hothouse or otherwise covering the plants to shield them from aerial observation will the property holder be deemed to have demonstrated an objectively reasonable expectation of privacy from overflights.

Appellant argues that the principles articulated in *People* v. *Arno, supra*, 90 Cal.App.3d 505, compel a contrary conclusion as to the right of privacy. In *Arno*, the reviewing court was faced with a terrestrial search of an 8th floor suite in an office building by officers using binoculars from a hill some 200 to 300 yards distant from the building. The court

specifically found there were no other vantage points remotely approaching the height of the hill closer to the building. (*Id.*, at p. 509.)

The officers surveyed the building using binoculars, looked into the open window of the eighth floor suite and saw the defendant handle a distinctively marked box displaying a label with a picture of a nude woman. The box contained eight millimeter film. The product of the officer's observations found its way into an affidavit in support of a search warrant leading to the seizure of the pornographic film.

In holding the binocular aided scrutiny of the defendant's conduct constitutionally invalid, *Arno* articulated the following: "(1) the use of optical aids in the nature of binoculars, telescopes and the like is not itself determinative of the admissibility in evidence of the product of the observation; (2) the primary determinative factor is the presence or absence of a reasonable expectation of privacy of the person whose conduct, property, or documents is observed; (3) reasonable expectation of privacy . . . is tested by the extent to which the person has exposed his conduct, property, or documents to public view by the naked eye; (4) *if the purpose of the optically aided view is to permit clandestine police surveillance of that which could be seen from a more obvious vantage point without the optical aid*, there is no unconstitutional intrusion . . . ." (*Ibid.*, italics added.)

*Arno* does not help appellant; growing marijuana in an open area out of doors is a far cry from handling contraband in a business office several stories above the street level. A business person normally would expect that his conduct in the privacy of the office would be free from outside surveillance unless he knowingly exposes his conduct to the open view of those outside the office. On the other hand, according to the published cases anyone who grows marijuana in an open field does not have an objectively reasonable expectation of privacy insofar as overflight at lawful altitudes.

We are not unconscious of the legitimate concern about the activities of the government as "Big Brother." Good arguments can be made that a citizen should be able to possess a few acres of mountainous land in a rural area and be protected from governmental intrusion into his activities thereon, short of the necessity to preserve human life or property. Ample authority exists for the proposition that although the possessor of rural lands should anticipate the presence of hikers, hunters and trespassers on his land he need not anticipate the presence of police officers

engaged in exploratory searches. The concept of a *particularized* objective right to privacy is recognized in recent cases. For example, in *Phelan* v. *Superior Court* (1979) 90 Cal.App.3d 1005, 1012 [153 Cal.Rptr. 738], we held that even though the possessor of rural mountain land should anticipate the presence of occasional trespassers, the landowner need not anticipate the presence of police officers engaged in an exploratory search for marijuana. In *People* v. *Sneed* (1973) 32 Cal.App.3d 535 at page 541 [108 Cal.Rptr. 146], we said, "...recent Supreme Court cases make clear that though a person may have consented to observations from some sources and by some persons and therefore cannot have a reasonable expectation of privacy as to those sources or persons, he does not thereby forego his Fourth Amendment protection as to intrusions from all sources and by all persons, and particularly has not waived his right to privacy as to government agents." *People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262], holds that by placing trash barrels on a public parkway, the defendants had not forsaken their reasonable expectation of privacy with respect to the contents of the barrels even though it was not unforeseen that trash collectors or vagrants or children might rummage through the trash barrels. (*Id.*, at p. 367.) Although a hotel guest should reasonably expect that maids, janitors and repairmen might enter his room in the performance of their duties, he would not reasonably anticipate that the police would enter to search (*Stoner* v. *California* (1964) 376 U.S. 483, 489 [11 L.Ed.2d 856, 860, 84 S.Ct. 889]; *People* v. *McGrew* (1969) 1 Cal.3d 404, 412 [82 Cal.Rptr. 473, 462 P.2d 1], overruled on other grounds in *People* v. *McKinnon* (1972) 7 Cal.3d 899 [103 Cal.Rptr. 897, 500 P.2d 1097]). *Katz* v. *United States, supra*, 389 U.S. 347, holds that a person has a reasonable expectation of privacy in a public phone booth even though the public may observe the person in the booth making a call. Finally, in *People* v. *Triggs* (1973) 8 Cal.3d 884 [106 Cal.Rptr. 408, 506 P.2d 232] (disapproved on another point in *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896, fn. 4 [150 Cal.Rptr. 910, 587 P.2d 706]), it is held that persons using public restrooms with open stalls "have no reason to suspect that a hidden agent of the state will observe them." (*Id.*, at p. 891.)

Nevertheless, whether a citizen should be deemed to have an objective right of privacy from optically aided aerial surveillance of his activity on isolated rural mountain land is a question of public policy. Until such time as the Supreme Court speaks to the contrary, we feel constrained to follow the clear mandate of the published decisions which have spoken on the point.

### Respondents' Contentions as to
### Misstatements and Omissions in the
### Affidavit Supporting the Search Warrant

At the suppression hearing in the superior court, respondents sought to have the search warrant invalidated on the ground there were substantial misstatements and omissions in the affidavit in support of the search warrant. The trial court rejected this argument and suppressed the evidence only on the ground that the binocular search was illegal.

We have examined respondents' asserted misstatements and omissions and we find that most of them would be relevant only to the question of the lawfulness of the aerial surveillance.[4] Since we hold the aerial surveillance was lawful because respondents had no reasonable expectation of privacy from overflight, the asserted misstatements and omissions as to the size of the cultivated area and the altitude and distance of the airplane from the garden become irrelevant.

Respondents also assert that the affidavit omits any reference to the "numerous roads" in the area and makes no mention of the "numerous dwelling houses" in the vicinity of the marijuana garden, stating only that the affiant believed there was evidence in *the* dwelling house. The affidavit does mention that there is more than one structure on the property to be searched; however, it does not specify the character of each individual structure. Page one thereof describes the place to be searched as "a 28 acre parcel of real property located at 39900 Road 800, Madera County, California, . . . consisting of open fields forested with oak trees, brush and grass, upon which sit several single story structures appearing to be *dwelling places and/or outbuildings* and those dwelling places and/or outbuildings." (Italics added.) The affiant further stated: "[Y]our affiant has formed the expert opinion that *the dwelling house* located at 39900 Road 800 . . . contains such evidence as to the identity of the persons occupying and controlling the property, as well as such items used to cultivate, process and prepare for sale marijuana." (Italics added.)

---

[4]Respondents assert that the circular marijuana garden was not 50 feet in diameter as set forth in the affidavit but was actually smaller; that the airplane during observations of the marijuana was not flying at a height of between 500 and 800 feet as Hahn stated in the affidavit but at a height of 1,000 to 1,100 feet; and that the affidavit fails to mention that the airplane was one to three miles away from the marijuana patch during the surveillance.

█ *People* v. *Kurland* (1980) 28 Cal.3d 376 [168 Cal.Rptr. 667, 618 P.2d 213] holds that remedies may be imposed for the omission of material facts in an affidavit in support of a search warrant. Facts are deemed material for this purpose if their omission makes the affidavit "substantially misleading" (*id.*, at p. 385). The remedy for omission of material facts depends on whether the omission was (1) reasonable, (2) negligent, or (3) recklessly inaccurate or intentionally misleading (*id.*, at pp. 387-388). If the omission was reasonable, nothing further need be done. If the omission was negligent, the remedy is to add the omitted facts and retest the affidavit for probable cause (*id.*, at p. 390). If the omission was intentional with the purpose of deceiving the magistrate or if the affiant recklessly disregarded the accuracy and completeness of the affidavit, the warrant is quashed automatically (*ibid.*). █ The *Kurland* court at page 390 explained who bears the burden of proof in this regard: "The burden on the issues of materiality, privilege, and affiant's culpability is to be allocated as in the case of misstatements. If the defense states 'with some specificity' its reasons for believing that material facts were omitted, it may try to show such omissions and their materiality. The obligation of showing that material omissions were proper or reasonable rests with the People, but defendant has the burden of demonstrating recklessness or intent to mislead. (See *Cook, supra*, 22 Cal.3d at pp. 89-92; *Theodor, supra*, 8 Cal.3d at p. 102.)"

Respondents have asserted that the affidavit should have included the fact that there was more than one dwelling house on the property. We conclude that this assertion was enough to satisfy their initial burden under *Kurland* because it would be material to the magistrate issuing the warrant to know that there were several different habitations on the premises as opposed to merely one habitation with attendant outbuildings for farming purposes. Such facts are material, because if the affidavit showed on its face that there were multiple separate dwellings on the premises, then the magistrate could only issue a warrant for each of these dwellings (and whatever zones of privacy existed around each of them) upon a showing of probable cause as to each dwelling (cf. *People* v. *Sheehan* (1972) 28 Cal.App.3d 21, 24-26 [103 Cal.Rptr. 201]; see 2 LaFave, Search and Seizure (1978) § 4.5, pp. 78-81). However, if the officers did not know and had no reason to know that the buildings they saw on the subject premises were actually separate dwellings, then it would not be necessary for the affidavit to show and the magistrate to find probable cause as to each structure (*United States* v. *Rios* (10th Cir. 1979) 611 F.2d 1335, 1347).

Since the number of separate residential units on the subject property was material to a determination of probable cause, respondents made a sufficient showing to require a hearing under *Kurland* (28 Cal.3d at p. 390). However, at the superior court hearing on the suppression motion, when defense counsel stated that he wished to be heard on the matter of the attack on the warrant and the insufficient facts presented to the issuing magistrate, the superior court judge foreclosed further discussion on that point, stating that such discussion would not be helpful because the court was ruling against respondents on that point, based on the points and authorities submitted and the testimony at the preliminary hearing. We conclude that the court should have allowed further argument and evidence, if proffered, because the respondents met their initial burden under *Kurland*. They stated "with some specificity" reasons for believing that material facts were omitted. (*Ibid.*) Once material omissions are shown, the burden shifts to the People to show that such omissions were proper and reasonable. Because the trial court precluded a full inquiry into the issue of material omissions and the affiant's state of mind in making such omissions, we remand the matter with directions to permit such a hearing conducted in accordance with the principles in *Kurland*.

As to respondents' overbreadth argument, the trial judge similarly truncated argument at the suppression hearing. On remand, if the superior court concludes after a hearing on the *Kurland* issue that the officers had no reason to know there were multiple dwellings on the property, then the principles expressed in *United States* v. *Rios, supra*, 611 F.2d 1335, 1347 would apply and the warrant should be upheld. However, if the superior court concludes that the facts regarding multiple dwellings must be added to the affidavit as a remedy for the omission, then the warrant would be vulnerable to challenge under *People* v. *Sheehan, supra*, 28 Cal.App.3d 21 and related cases.

The judgment is reversed and the matter is remanded to the trial court with directions to conduct a hearing in accordance with the principles announced herein.

Hanson (P. D.), J., and Evans (C. P.), J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 24, 1981.

*Assigned by the Chairperson of the Judicial Council.