[Civ. No. 36327. First Dist., Div. Two. May 14, 1976.]

DANVILLE FIRE PROTECTION DISTRICT,
Plaintiff and Appellant, v.
DUFFEL FINANCIAL AND CONSTRUCTION COMPANY et al.,
Defendants and Respondents;
PROSPECT FARMS, Defendant and Appellant;
ASSOCIATED HOME BUILDERS OF THE
GREATER EASTBAY, INC., Intervener and Respondent.

LANDPAC ENTERPRISES, Plaintiff and Respondent, v.
DANVILLE FIRE PROTECTION DISTRICT,
Defendant and Appellant.

**COUNSEL**

Cowan & Henze and Douglas G. Cowan for Plaintiff and Appellant and Defendant and Appellant Danville Fire Protection District.

Tinning & DeLap. Robert T. Eshleman and Jay P. Sanders for Defendants and Respondents, for Defendant and Appellant Prospect Farms and for Plaintiff and Respondent.

Brucher & Shiver and Joseph D. Joiner for Intervener and Respondent.

**OPINION**

**TAYLOR, P. J.**—On this appeal by the Danville Fire Protection District from a judgment after a court trial in two consolidated matters,[1] the main question is whether the district was entitled to enforce against the builders the heat, smoke and sprinkler system requirements of its Ordinance No. 5 that are more stringent than those of the Uniform Building Code adopted by the county pursuant to the State Housing Law (Health & Saf. Code, § 17910 et seq.). ■ We have concluded that the court below properly found that since 1970 the state had preempted the field pursuant to Health and Safety Code sections 17921 and 17922, and

---

[1] In No. 134709, the district, an autonomous local district located entirely within the county, sought to enforce Ordinance No. 5 against the named firms engaged in the business of residential construction projects in the county. Associated Home Builders of the Greater Eastbay, Inc., a trade association composed of over 400 firms engaged in some aspect of the residential construction industry in the San Francisco Bay Area, intervened in No. 134709 to protect the business interests of its members in the county. We have used the term "builders" to collectively designate all of these parties. In No. 140544, one of the builders named as a defendant in No. 134709 (Landpac) sought declaratory relief as to Ordinance No. 5.

section 1082 of title 25 of the California Administrative Code; this conclusion makes moot the cross-appeal of Prospect Farms.[2]

The pertinent facts and conclusions of the trial court are as follows:

On August 9, 1971, the district enacted its fire protection Ordinance No. 5, which requires certain heat and smoke detector alarm systems and fire sprinkler systems to be installed in all new construction of certain types. Basically, these detector systems set off an alarm both at the residential location and in the headquarters of the district, and are required to be installed in all new buildings intended for use as a place of residence by more than two family units. Sprinkler systems are required in commercial installations. All systems require a means of communication, such as a local telephone line, from the location of the alarm system to the district, which is connected to a central reporting unit that, in turn, alerts the district whenever a heat or smoke detector or sprinkler system is activated for any reason. The cost of installing the heat and smoke detector systems with the connecting line to the headquarters of the district is relatively high. In addition, a monthly service charge for maintenance and inspection of the system is imposed, including the cost of leasing the equipment.

The court concluded that the fire protection requirements of the district were void as the field was totally preempted by the State Housing Law.

A brief review of the pertinent provisions of the State Housing Law, and the applicable rules and regulations, demonstrates the validity of the ruling below.[3]

In 1961, the state Legislature enacted the State Housing Law, part 1.5, commencing with section 17910 of the Health and Safety Code,

---

[2]The record indicates that the cross-appeal was based on the trial court's additional conclusion that the builders had not been deprived of equal protection of the laws as guaranteed by the 14th Amendment of the U.S. Constitution. In any event, the court below found that the district had submitted its requirements to Prospect Farms before the effective date of the ordinance. Thus, it is also not necessary to reach the question of whether Prospect Farms properly exhausted its administrative remedies prior to its cross-appeal.

[3]We have been greatly aided by the trial court's helpful memorandum of decision, as well as the excellent briefs of the parties, and have incorporated edited portions of each in this opinion.

providing for "Regulation of Buildings Used For Human Habitation." The act then provided in section 17921 that the department (subsequently the Commission of Housing and Community Development) "shall adopt, amend, repeal, and, as hereinafter provided . . . shall enforce rules and regulations for the protection of the public health, safety, and general welfare of the occupant and the public governing the erection, construction, enlargement, conversion, alteration, repair, moving, removal, demolition, occupancy, use, height, court, area, sanitation, ventilation and maintenance of all hotels, apartment houses, and dwellings." (Stats. 1961, ch. 1844, p. 3920.)

In 1966, our state Supreme Court held that the State Housing Law empowered local agencies to enact building regulations imposing standards "equal to or greater" than those promulgated by the state (§ 17951) and the state statutes and regulations were made inapplicable in any city having and enforcing such local regulation (§ 19825). (*City of Bakersfield* v. *Miller,* 64 Cal.2d 93, 100-101 [48 Cal.Rptr. 889, 410 P.2d 393].) Thus, at that time, the state building requirements did not preempt the field of building regulation.

In 1970, the Legislature amended section 17951 by deleting the provision authorizing local agencies to adopt ordinances imposing standards "equal to or greater" than those promulgated by the state, and repealed former section 19825. Other substantial revisions of the State Housing Law (Stats. 1970, ch. 1436) directed the State Housing Commission to adopt rules and regulations imposing "the same requirements" as are contained in the various uniform building codes, including the Uniform Building Code of the International Conference of Building Officials (§ 17922).[4]

The Legislature also added new sections 17958, 17958.5 and 17958.7 (set forth below, so far as pertinent)[5] and declared that "uniformity of

[4]Section 17922 then provided, so far as pertinent: "Except as otherwise specifically provided by law, the rules and regulations adopted, amended, or repealed from time to time pursuant to this chapter shall impose the same requirements as are contained in the Uniform Building Code. . . . In promulgating regulations the commission shall consider local conditions and any amendments to the uniform codes referred to in this section.

*"Local use zone requirements, local fire zones, building setback, side and rear yard requirements. . . are hereby specifically and entirely reserved to the local jurisdictions notwithstanding any requirements found or set forth in this part."* (Italics supplied.)

[5]Section 17958 required every city and county to adopt ordinances or regulations imposing the same requirements as those adopted pursuant to 17922, within one year after the effective date of the 1970 amendments (Nov. 23, 1970).

Section 17958.5 provided: "In adopting the ordinances or regulations pursuant to Section 17958, a city or *county may.* make such changes or modifications in the

codes throughout the State. . .is a matter of statewide interest and concern since it would reduce housing costs and increase the efficiency of the private housing construction industry and its production." (Stats. 1970, ch. 1436, § 7.) In addition, section 17921 provided for the adoption of comprehensive rules and regulations governing the erection, construction, alteration, repair, moving, removal, demolition, occupancy, use, height, court, area, sanitation, ventilation and maintenance of all hotels, motels, apartment houses, and dwellings, and buildings and structures accessory thereto, and recited that the department shall enforce the rules and regulations for the protection of the public health, safety and general welfare of the occupant and the public.

Pursuant to the 1970 amendments to section 17922, title 25 of the Administrative Code, section 1082, was promulgated and specified approved fire alarm systems and fire extinguisher systems in apartment houses 3 or more stories high or containing more than 15 apartments, every hotel 3 or more stories high or containing 20 or more guest rooms.

The district, on August 9, 1971, adopted Ordinance No. 5 providing, so far as here pertinent, that fire detection and extinguishment systems must be installed within buildings which, because of their (1) size; (2) type of construction; (3) use; or (4) unavailability of suitable fire protection equipment constitute a degree of fire hazard in excess of present and projected fire protection facilities, and constituting a life hazard defined as (1) a place of residence by more than two family units. Obviously, the provisions of the above regulation adopted pursuant to the 1970 amendments to the State Housing Law cannot be enforced along with the conflicting and more stringent requirements of Ordinance No. 5.

The district argues that the proviso "Except as otherwise specifically provided by law" at the beginning of section 17922 specifically indicates that the Legislature did not intend to restrict the power of local autonomous fire districts to adopt ordinances as authorized by section

requirements contained in regulations adopted pursuant to Section 17922 *as it determines are reasonably necessary because of local conditions.*" (Italics supplied.)

Section 17958.7 provided: "The governing body of a city or county before making any modifications or changes pursuant to Section 17958.5 *shall make an express finding* that such modifications or changes are needed. Such a finding shall be available as a *public record and a copy, together with the modification or change, filed with the department.* Nothing contained in this part shall be construed to require the governing body of any city or county to alter in any way building regulations enacted on or before. . .[Nov. 23, 1970]." (Italics supplied.)

13869,[6] and cites *Modesto Irr. Dist.* v. *City of Modesto,* 210 Cal.App.2d 652, 656 [27 Cal.Rptr. 90]). However, section 13869 is a general grant of authority in contrast to the very specific provisions of 17922, 17958, and 17958.5, quoted above. Thus, the more specific statutory provisions govern the general ones (*People* v. *Gilbert,* 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580]; *Bozaich* v. *State of California,* 32 Cal.App.3d 688, 697 [108 Cal.Rptr. 392]). The only delegation of authority to local governments to regulate in this area is in section 17922, quoted in footnote 4 above, that specifically limits local regulations to use zones, fire zones, building setback, side and rear yard requirements, and property line requirements. Ordinance No. 5 regulates none of these and the specific grant of reserved local jurisdiction of section 17922 is a very limited one. Further, the limited grant of reserved power to local entities is by implication a denial of the grant of any greater jurisdiction.

The court also found that the district did not file its Ordinance No. 5 nor any findings with respect to Ordinance No. 5 with the Department of Housing and Community Development, as required by section 17958.7. Had it done so on the basis of a finding on certain local conditions, such as weather or geography, the court might have been able to sustain the ordinance pursuant to section 17958.7, quoted in footnote 5 above.

The district attempts to argue that since fire districts and local autonomous districts were not mentioned along with cities and counties, it was excluded under the well known rule of construction of *"expressio unius est excludio alterius."* It is undisputed, however, that the district, while local and autonomous, is an entity of the county and entirely within its borders. Accordingly, it is comprised within the definition of county.

Further, we note that the Legislature in 1970 did not amend certain existing provisions. For example, every city and county is (§ 17960) mandated to enforce in its jurisdiction "all the provisions of this part and rules and regulations promulgated thereunder. . . ." The cities and counties may designate (§ 17964) a department to enforce the rules; excepting those provisions pertaining to fire prevention, fire protection and the control of the spread of fire in areas where there is no city,

---

[6]The statute provided: "The district board may, after publication of notice and hearing adopt and enforce reasonable ordinances for the prevention and suppression of fires and conflagrations and for the protection and preservation of life and property against the hazards of fire and conflagration."

county or fire protection district; if there is, then the provisions of this part shall be enforced by the chief of the fire protection district § 17961.5). Thus, the Legislature had the authority of local fire districts in mind in 1970 and intended them to comply with the changes made at that time.

A substantially identical argument to that of the district here was rejected by our Supreme Court in *In re Lane,* 58 Cal.2d 99 [22 Cal.Rptr. 857, 372 P.2d 897]. The court held, at pages 102 and 103 that whenever, as here, the Legislature has seen fit to adopt a general scheme for the regulation of a particular subject, the control of local legislation ceases. Our Supreme Court also indicated that in determining whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, an appellate court may look to the whole purpose and scope of the legislative scheme and is not required to find such an intent solely in the language used in the statute. Here, the Legislature's actions in 1970 clearly demonstrate its intent to occupy the entire field.

We also note that in 1967, the Governor's Commission on the Law of Preemption recommended that the Legislature base its decision whether to preempt upon whether the need for statewide uniformity outweighed the need for local government to be permitted to regulate (Governor's Commission on Law of Preemption, Rep. and Recommendations for the Governor of Cal. (1967) p. 8). The commission identified the following two basic factors:

1. The desirability of freedom of movement of persons or goods within the state: "Varying local regulation may create a patchwork of standards which would tend to cause confusion, obstacles to the movement of a transient population, and imposition of regulatory standards on individuals who cannot reasonably be expected to know varying standards as they move about the state." (Pp. 8-9.)

2. The desirability of a statewide consensus: "We refer here to an examination of the nature of the conduct sought to be regulated and the desirability that, if such conduct is to be regulated, the regulation be based upon a statewide rather than a local consensus." (P. 9.)

The regulation of building codes fits exceptionally well into either of these categories. A patchwork of varying code regulations would be extremely costly for the construction industry, particularly in metropoli-

tan areas. Second, building codes are technical matters based on the opinions of experts who are not always available to local entities. The Uniform Codes specified by section 17922 represent at least a statewide, if not a national consensus.

We note that our interpretation of the 1970 legislation is consistent with that reached in *Baum Electric Co.* v. *City of Huntington Beach,* 33 Cal.App.3d 573, 577-578 [109 Cal.Rptr. 260].[7]

■ Further, a local municipal ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by general law. ■ Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates, contradicts or enters an area fully occupied by general law, either expressly or by legislative implication. If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complimentary legislation, even if the subject is otherwise one properly characterized as a "municipal affair" (*Lancaster* v. *Municipal Court,* 6 Cal.3d 805 [100 Cal.Rptr. 609, 494 P.2d 681]).

The district complains of the court's failure to make a specific finding as to the commercial portions of Ordinance No. 5. The record indicates that this issue was not before the court below as the district only sought to enforce the residential portions of its ordinance. Further, after concluding that the field of building regulation was preempted, any finding as to the commercial portion of the ordinance became immaterial and could not constitute prejudicial error (*Leonard* v. *Fallas,* 51 Cal.2d 649, 653 [335 P.2d 665]).

In view of the above, it is not necessary to discuss the district's contentions pertaining to the "I Occupancy" provisions of the Uniform Building Code, as this contention is grounded on the validity of the ordinance.

The cross-appeal is dismissed; the judgment is affirmed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied June 11, 1976, and the petition of appellant Danville Fire Protection District for a hearing by the Supreme Court was denied July 8, 1976.

[7]The case held that state law does not preempt cities from adopting additional regulations and subjects not covered by the state law and regulations, where the additional regulations are consistent with the particular National Electric Code, mentioned by section 17922.