OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 88-904 |
| of | : | |
| | : | SEPTEMBER 14, 1989 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| RONALD M. WEISKOPF | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE HONORABLE JAMES F. MCMULLEN, STATE FIRE MARSHAL, has requested an opinion on the following questions:

1. Under sections 17922, 17958.5 and 17958.7 of the State Housing Law, may cities and counties adopt building standards relating to fire and panic safety that are more stringent than the state standards adopted by the State Fire Marshal?

2. May a fire protection district adopt a fire prevention code or regulations setting forth building standards relating to fire and panic safety that are stricter than those contained in the State Building Standards Code?

CONCLUSIONS

1. Cities and counties may not adopt building standards relating to fire and panic safety that are more stringent than those adopted by the State Fire Marshal under sections 17922, 17958.5 or 17958.7 of the State Housing Law.

2. A fire protection district may not adopt a fire prevention code or other regulations that set forth building standards relating to fire and panic safety which are stricter than the standards contained in the State Building Standards Code.

ANALYSIS

The function of the Office of the State Fire Marshal is to promote and develop ways and means of protecting life and property against fire and panic. (Health & Saf. Code, § 13100.1.)[1] Toward that end several sections of the Health and Safety Code direct the Fire Marshal to prepare and adopt building standards relating to certain aspects of fire prevention and for the protection of life and property against fire and panic in various categories of structures throughout the state. (See

---

[1]Unidentified statutory references are to the Health and Safety Code.

e.g., §§ 13108 [state-owned buildings and institutions], 13143 [certain types of occupancies such as jails, hospitals, nurseries, schools, theaters, and auditoriums], 13143.6 [occupancies for semi-custodial care]; 13211 [high rise structures], 17920.7 [structural fire safety and fire-resistant exits in multiple story structures let for human habitation], 17921(b) [hotels, motels, lodging houses, apartment houses, dwellings, buildings, and accessory structures].)  These building standards are submitted to the State Building Standards Commission for approval under the State Building Standards Law (div. 13, pt. 2.5, § 18901 et seq.) and are then published in the State Building Standards Code (Tit. 24, Code Cal. Regs.).  (§§ 18907, 18930, 18938, 18940, 18942, 18943; 69 Ops.Cal.Atty.Gen. 260, 261 (1986); cf., § 18902.)[2]

Two of the sections pursuant to which the State Fire Marshal adopts building standards, sections 17920.7 and 17921(b), appear in the State Housing Law (Health & Saf. Code, div. 13, pt. 1.5, § 17910 et seq.).  Sections 17922, 17958.5 and 17958.7 of that Law permit local agencies to modify certain state building standards to accommodate certain local conditions.  We are specifically asked whether under those particular sections, cities and counties, and also fire protection districts, may adopt building standards which are more stringent than those adopted by the Fire Marshal.  We conclude that under the specified code sections, neither cities and counties, nor fire protection districts, may adopt building standards more stringent than those of the State Fire Marshal.[3]

To be clear at the outset, this opinion is specifically concerned with the authority of local agencies to adopt more stringent standards than those adopted by the State Fire Marshal under the three particular sections of the State Housing Law we are asked about.  Because of that specific focus we do not address other provisions of law that permit local agencies to adopt local building standards that deviate from state building standards adopted by the State Fire Marshal, and which may permit them to adopt stricter building standards than those thereunder.  (See e.g., §§ 13216, 17951(d), 17920.7; cf., 58 Ops.Cal.Atty.Gen. 13 (1975).)

1.  Cities and Counties Adopting Building Standards Relating To Fire and Panic Safety Under Sections 17922, 17958, 17958.5 and 17958.7 of the State Housing Law That Are More Stringent Than The State Fire Marshal's Standards.

Under section 7 of article XI of the California Constitution, a city or county "may make . . . within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."  (Cal. Const, art. XI, § 7.)  A local ordinance which is intended to protect the public health, safety and welfare, such as one prescribing building standards relating to fire safety, would fall within that ambit.  (58 Ops.Cal.Atty.Gen. 13, 14, *supra*; cf., *People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484; *People* v. *Mueller* (1970) 8 Cal.App.3d 949, 954 fn. 1.)  The ordinance would be presumed valid so long as it did not conflict

_____

[2]The Legislature has recently provided that all references to the State Building Standards Code, the State Building Code, or Title 24 of the California Administrative Code shall mean the "California Building Standards Code."  (§ 18902, added by Stats. 1988, ch. 1194, p. [2899], § 1.)  Inasmuch as we quote from sections of law which refer to that Code as the "State Building Standards Code," we will do likewise to avoid confusion.

[3]We were also asked whether a fire protection district could adopt building standards relating to fire and panic safety that were more restrictive than those found in a city or county code.  That aspect of the second question is rendered moot by our conclusions that cities and counties may not adopt building standards relating to fire and panic safety that are more stringent than those adopted by the State Fire Marshal, and that fire protection districts may not do so either.

with general, i.e., state law.  (Cf., *Freeman* v. *Contra Costa County Water District* (1971) 18 Cal.App.3d 404, 408; *Stanislaus Co. etc. Assn.* v. *Stanislaus* (1937) 8 Cal.2d 378, 383, 384.)

But local legislation that does conflict with state law is void.  As our Supreme Court has summarized:

> "`"As defined by the cases the constitutional phrase `conflict with general laws'. . . may arise in several different ways.  It may grow out of the exact language of the state and municipal laws [citations] or <u>from a local attempt `to impose additional requirements in a field that is preempted by general law'</u> [citations] or from the state's adoption of `a general scheme for the regulation of a particular subject' [citations]."  (*Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 541 [emphasis added]; see also *People ex rel Deukmejian* v. *County of Mendocino, supra,* 36 Cal.3d at 484-485; *Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 806, 808; 58 Ops.Cal.Atty.Gen. 519, 521-523, 529 (1975); 58 Ops.Cal.Atty.Gen. 13, 14, *supra*.)

"Conflict" with state law can thus arise in many ways, and as pertinent herein one of them occurs when the state has enacted a comprehensive legislative scheme intended for uniform application throughout the state and a local ordinance seeks to impose a more stringent requirement to govern a particular facet of the area.  In such a case, the local ordinance would be "to that extent void insofar as it prohibits what [the] state law authorizes.  [Citations.]" (*Markus* v. *Justice's Court* (1953) 117 Cal.App.2d 391, 397; see also, *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.* (1976) 58 Cal.App.3d 241, 249; *In re Lane* (1962) 58 Cal.2d 99, 102-103; 61 Ops.Cal.Atty.Gen 365, 372 (1978);43 Ops.Cal.Atty.Gen. 218, 219 (1964).)[4]

The State Housing Law presently constitutes a legislative design to secure uniform building standards throughout the state and to preëmpt local divergences therefrom, except as specifically authorized by it.  Prior to 1970, the State Housing Law, although detailed and comprehensive, had not preëmpted the field of building safety standards because it specifically empowered cities and counties to enact building regulations imposing standards that were "equal to or greater" than those promulgated by the state (former § 17951; Stats. 1961, ch. 1844, p. 3922, § 8), and it made the state standards inapplicable in those local jurisdictions which did so (former §§ 19825 [Stats. 1961, ch. 1844, p. 3926, § 1], 19826 [*id.*, § 12, p. 3927]).  (See, *City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93, 100-101; see *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co., supra,* 58 Cal.App.3d 241, 245; *People* v. *Wheeler* (1973) 30 Cal.App.3d 282, 289; *Baum Electric Co.* v. *City of Huntington Beach* (1975) 33 Cal.App.3d 573, 577.)

---

[4]Under article XI, section 5, subdivision (a) of the California Constitution, a local ordinance of a charter city would supersede general state law with respect to "municipal affairs." (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 704; *Baggett* v. *Gates* (1982) 32 Cal.3d 128-135-136.)  But "if the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complimentary legislation, even if the subject is otherwise one properly characterized as a `municipal affair.' (*Lancaster* v. *Municipal Court, supra,* 6 Cal.3d 805.)" (*Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co., supra,* 58 Cal.App.3d 241, 249. "While `[t]he determination of what constitutes a strict municipal affair is often a difficult question' [citation], the courts look to the provisions of the conflicting state statute to see if it addresses a matter of `statewide concern' [citations].  If so, the state law is controlling regardless of the charter provision. [Citations.]"  (69 Ops.Cal.Atty.Gen. 203-206 (1986).)  The matter of having uniform statewide building standards relating to fire and panic safety would be a matter of "statewide concern." (58 Ops.Cal.Atty.Gen. 13, *supra*; cf., Stats. 1970, ch. 1436, p. 2786, § 7.)

In 1970, however, the Legislature substantially amended the State Housing Law in order to provide a comprehensive scheme to secure a general uniformity of building standards throughout the state in matters such as safety and structure of buildings, details of construction, use of materials, and electrical, plumbing and heating specifications. (Stats. 1970, ch. 1436, § 7, p. 2786; *Green* v. *Superior Court* (1974) 10 Cal.3d 616, 627; *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.*, *supra*, 58 Cal.App.3d at 245-247, 248; *Baum Electric Co* v. *City of Huntington Beach*, *supra*, 33 Cal.App.3d 573, 584; *Taschner* v. *City Council [of Laguna Beach]* (1973) 31 Cal.App.3d 48, 60; 60 Ops.Cal.Atty.Gen. 234, 237-239 (1977); 55 Ops.Cal.Atty.Gen. 157, 160 (1972); 54 Ops.Cal.Atty.Gen. 87, 88-89 (1971).)[5]  It (i) directed the State Department of Housing and Community Development to adopt rules and regulations imposing "the same requirements" that are contained in various uniform industry building codes (Stats. 1970, ch. 1436, § 1, p. 2785, amending § 17922, subd. (a)), and then (ii) it removed the aforementioned authority of cities and counties to adopt more stringent building standards than those imposed by the state (and the companion provision making the less stringent state standards inapplicable those local jurisdictions which did so), and required instead that every city and county adopt ordinances or regulations imposing those same requirements within their jurisdictions within one year, or they would be made applicable in them at that time by force of law (*id.*, § 3, p. 2786, adding § 17958). (See, *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co*, *supra*, 58 Cal.App.3d 245; *People* v. *Wheeler*, *supra*, 30 Cal.App.3d 282; *Baum Electric Co.* v. *City of Huntington Beach*, *supra*, 33 Cal.App.3d 573; 55 Ops.Cal.Atty.Gen. 157, 160, *supra*; 54 Ops.Cal.Atty.Gen. 87, 88-89, *supra*.)

But even then local jurisdictions were allowed wide latitude to deviate from state building standards under the State Housing Law. (See e.g., *Baum Electric Co.* v. *City of Huntington Beach*, *supra*; *People* v. *Wheeler*, *supra*; 55 Ops.Cal.Atty.Gen. 157, 160, *supra*; 54 Ops.Cal.Atty.Gen. 87, 88 (1971).)  This is because while the 1970 amendments to the Law were designed to secure a uniformity of codes throughout the State, the Legislature showed a "sensitivity to, and deference for, local conditions and needs." (55 Ops.Cal.Atty.Gen. 157, 160, *supra*, quoted in *Baum Electric Co.* v. *City of Huntington Beach*, *supra* at 584.)  For example, the Law as amended provided that a county or city could make such changes or modifications in the state requirements "as it determines are reasonably necessary because of local conditions" (§ 17958.5, added by Stats.

_____

[5]When it adopted the 1970 amendments to the State Housing Act, the Legislature declared that "the uniformity of codes throughout the State . . . [was] a matter of statewide interest and concern since it would reduce housing costs and increase the efficiency of private housing construction industry and its production" and that such "uniformity [could] be achieved within a framework of local autonomy, by allowing local governments to adopt changes making modifications in [the] codes based on differences in local conditions . . . ." (Stats. 1970, ch. 1436, *supra*; *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co*, *supra*, 58 Cal.App.3d 241, 245; *People* v. *Wheeler* (1973) 30 Cal.App.3d 282, 289; *Baum Electric Co.* v. *City of Huntington Beach*, *supra*, 33 Cal.App.3d 573, 577.)  In 60 Ops.Cal.Atty.Gen. 234, *supra*, we pointed out that the utilization of the uniform codes was an attempt to reduce housing costs by reducing production costs and increasing the efficiency of the housing industry. (*Id.*, at 237.)  By allowing the industry to rely on a single set of standards rather than a different one for every area, it could develop more economical and efficient approaches to basic design, construction techniques and materials. (*Id.*, at 238.)  Of course another purpose underlying the building regulations was the protection of the public health and safety. (*Baum Electric Co.* v. *City of Huntington Beach*, *supra*, at 581.)  In that opinion we also pointed out that since uniform codes are based on professional expertise, research and testing that is not routinely available to local agencies, the adoption of statewide uniform standards would also serve that end. (60 Ops.Cal.Atty.Gen., *supra*; see also *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.*, *supra*, 58 Cal.App.3d 241, 249.)

1970, ch. 1436, § 4, p. 2786), and it also provided that the State Housing Law was not meant to alter local building regulations that had been enacted prior to its effective date. (§ 17958.7, added by Stats. 1970, ch. 1436, § 5, p. 1436.)  In 55 Ops.Cal.Atty.Gen. 157, *supra,* we concluded that the former provision demonstrated an intention to allow cities and counties to adopt regulations with additional or more restrictive building standards than those promulgated by the state (*id.*, at 160-161), and in 54 Ops.Cal.Atty.Gen. 87, *supra,* we said that the latter provision meant that the Law's requirement for uniformity did not apply to building activity that was already regulated by an existing local regulation enacted on or before November 23, 1970 (*id.*, at 88-89).

These broad exemptions from statewide building standards no longer obtain and state preëmption of the "field" is more complete.  In 1980 the Legislature (i) amended section 17958.5 of the State Housing Law to severely limit the types of local conditions for which local agencies could deviate from statewide building standards (Stats. 1980, ch. 130, p. 303, § 2; Stats. 1980, ch. 1238, p. 4203, § 9), and (ii) it deleted the exception from the requirement of uniformity previously found in section 17958.7 for nonconforming local building regulations that were enacted on or before November 23, 1970 (Stats. 1980, ch. 1295, p. 4381, § 1).  As mentioned, what we have now is a state preëmption of the field of building standard regulation, except for such now more limited deviations therefrom as the Legislature has specifically permitted local agencies.  Our attention is particularly and specifically directed to three sections of the Law in which the Legislature has permitted such activity: sections 17922, 17958.5, and 17958.7.  Before we turn to them, however, we will briefly relate them to each other and to other sections of the State Housing Law.

We have mentioned how two sections of the State Housing Law impose a duty on the State Fire Marshal to prepare and adopt building standards relating to certain aspects of fire prevention in multiple story structures let for human habitation (§ 17920.7) and in hotels, motels, lodginghouses, apartment houses and dwellings, and buildings in general (§ 17921, subd. (b)).  But the major thrust of the Law is concerned with building standards (and other regulations) prepared and adopted by the Department of Housing and Community Development.  Subdivision (a) of section 17921 imposes a duty upon that department (cf., § 17920, subd. (d)) to adopt building standards (other than those relating to fire and panic safety) for the protection of the public health, safety and general welfare with respect to the construction, alteration, repair, etc., of all hotels, motels, lodginghouses, apartment houses, and dwellings.  (§ 17921, subd. (a).)  As with the Fire Marshal's building standards, those of the department are submitted to the State Building Standards Commission for approval and inclusion in the State Building Standards Code, under the State Building Standards Law (div. 13, pt. 2.5, § 18901 et seq.).

Subdivision (a) of section 17922 requires that the building standards thus adopted by the department "impose substantially the same requirements as are contained in the most recent editions of [various] uniform industry codes . . . ."  (§ 17922, subd. (a).) (See generally, 63 Ops.Cal.Atty.Gen. 566 (1980.)  Section 17958 then essentially makes those standards applicable in all cities and counties:  It permits cities and counties to make changes or modifications in them only if the changes would "impose the same requirements," and it provides that if a city or county does not amend, adopt or repeal ordinances or regulations to impose those requirements, they will become applicable in such city or county 180 days after they are published in the State Building Standards Code.[6]  (See also, § 18941.5, subd. (a).)

---

[6]Section 17958 provides:

"Except as provided in Sections 17958.8 and 17959, any city or county may make changes in the provisions adopted pursuant to Section 17922 and published in the State Building Standards Code or the other regulations thereafter adopted

But there is one notable exception to section 17958: Under section 17958.5 a city or county may make changes or modifications to the building standards adopted pursuant to section 17922, subdivision (a), "as it determines . . . are reasonably necessary because of local climatic, geological, or topographical conditions." (§ 17958.5.) Section 17958.7 provides that for any such change to be effective, the local jurisdiction must make an express "finding" that it is reasonably necessary because of those particular local conditions, and it must file the "finding" with the Department of Housing and Community Development.

The first question asks whether under sections 17922, 17958.5 and 17958.7 a city or county may adopt building standards which are more stringent than those adopted by the State Fire Marshal? The essence of the answer is simple: Inasmuch as section 17922, upon which the other sections are predicated, only deals with building standards adopted by the Department of Housing and Community Development and not those adopted by the State Fire Marshal, none of the sections about which we are asked provides authority for a city or county to adopt more stringent standards than those adopted by the latter.

A. <u>Section 17922.</u> As just mentioned, section 17922 directs the Department of Housing and Community Development in adopting building standards for approval by the Commission on Housing and Community Development under the State Building Standards Law to "impose substantially the same requirements as are contained in the most recent editions of [various] uniform industry codes . . . ." (§ 17922, subd. (a); see 63 Ops.Cal.Atty.Gen. 566 (1980).) When speaking of building standards, all of the subdivisions of the section refer to those of that Department. Thus the section commences:

"(a) Except as otherwise specifically provided by law, <u>the building standards adopted and submitted by the department</u> for approval . . . and the other rules and regulations . . . adopted . . . pursuant to this chapter
. . . shall impose substantially the same requirements as are contained in the most recent editions of the following uniform industry codes as adopted by the organizations specified . . . ." (Emphasis added.)

Subdivisions (c) and (d) of the section each commences with the similar reference:

pursuant to Section 17922 to amend, add, or repeal ordinances or regulations which impose the same requirements as are contained in the provisions adopted pursuant to Section 17922 and published in the State Building Standards Code or the other regulations adopted pursuant to Section 17922 or make changes or modifications in those requirements upon express findings pursuant to Sections 17958.5 and 17958.7. If any city or county does not amend, add, or repeal ordinances or regulations to impose those requirements or make changes or modifications in those requirements upon express findings, the provisions published in the State Building Standards Code or the other regulations promulgated pursuant to Section 17922 shall be applicable to it and shall become effective 180 days after publication by the commission. Amendments, additions, and deletions to the State Building Standards Code adopted by a city or county pursuant to Section 17958.7, together with all applicable portions of the State Building Standards Code, shall become effective 180 days after publication of the State Building Standards Code by the State Building Standards Commission."

"(c) [and (d)] Regulations other than building standards which are adopted, amended or repealed by the department and <u>building standards adopted and submitted by the department for approval</u> . . . ."  (Emphasis added.)

Nowhere in section 17922 is any reference made to building standards adopted by the State Fire Marshal.  As was seen at the very outset of this Opinion, his adoption of building standards for submission for approval to the Commission on Housing and Community Development and incorporation in the State Building Standards Code is directed by other provisions of law, viz., sections 13108, 13143, 13143.6, 13211, 17920.7, and 17921(b).

It is true that two of the sections pursuant to which the State Fire Marshall adopts building standards, 17920.7 and 17921(b), are found in the State Housing Law and indeed appear in the very same chapter in which section 17922 is found.  But when section 17922 speaks of building standards, it does not refer to building standards that are adopted under the chapter of the State Housing Law in which it appears, as it refers to other regulations that are adopted thereunder.  Such a reference could bring the building standards adopted by the State Fire Marshal pursuant to sections 17920.7 and 17921(b) within its ambit.  Instead, as we have seen, when section 17922 speaks of building standards, it specifically and continually refers to those that are adopted by the Department of Housing and Community Development.  Accordingly the section would not provide authority for a city or county to adopt building standards which are more stringent than those of the State Fire Marshal.[7]

B.  <u>Sections 17958 and 17958.5.</u>  As mentioned, when the 1970 amendments to the State Housing Law were first enacted, section 17958.5 gave broad authority for cities or counties to make changes or modifications in the state building standards taken from the uniform building

---

[7]We are aware that one subdivision of section 17922 does provide for a greater exercise of local authority.  Subdivision (b) "specifically and entirely" reserves regulation in the areas of local use zone requirements, local fire zones, building setback, side and rear yard requirements, and property line requirements to local jurisdictions, "notwithstanding any requirement found or set forth in [the State Housing Law]."  The use of the phrase "notwithstanding any requirement found or set forth in [the State Housing Law]" would mean that local regulation in those areas would take precedence over anything found in the State Housing Law.  (Cf., *In Re Marriage of Dover* (1971) 15 Cal.App.3d 675, 678 fn. 3; *State of California* v. *Superior Court* (1965) 238 Cal.App.2d 691, 695-696.)  That would include the State Fire Marshal's building standards which are adopted pursuant to sections 17921 and 17920.7.  However, the problem with applying the reserved jurisdiction of subdivision (b) to the Fire Marshal's building standards is that the matters which it reserves for local regulation involve zoning and not building standards.  (See e.g., *Taschner* v. *City Council* (1973) 31 Cal.App.3d 48, 60 [overruled on other grounds in *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 596 fn. 14]; *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.*, *supra*, 58 Cal.App.3d 241, 247.)  Zoning is an area that traditionally has been exercised by cities and counties (*Taschner* v. *City Council*, *supra* at 62 referring to Cal. Const., art XI, § 7; cf. §§ 17920(b), 18909(a), Gov. Code, §§ 65800, 65850) and is not one with which the State Fire Marshal would be involved in adopting building standards.  Conversely, since the "specific grant of reserved local jurisdiction in subdivision (b) is a very limited one," it "is by implication a denial of the grant of any greater jurisdiction," (*Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.*, *supra*, 58 Cal.App.3d 241, 247), and as such, would not be a grant of authority to act in other areas, such as adopting building standards.  (*Ibid.*)

codes to adapt them to local conditions.[8]  In 1980, however, the Legislature amended the section and greatly restricted the types of local conditions for which a deviation from statewide standards could be made:  It limited them to local climatic, geographical, or topographical conditions.  (Stats. 1980, ch. 130, p. 303, § 2; Stats. 1980, ch. 1238, p. 4208, § 9.)[9]  Section 17958.5 currently provides in part as follows:

> "(a) Except as provided in Section 17922.6 [which deals with the Office of Noise Control establishing minimum noise insulation standards for certain multi-occupant dwellings], in adopting the ordinance regulations pursuant to Section 17958, a city or county may make such changes or modifications in the requirements contained in the provisions published in the State Building Standards Code and the other regulations adopted pursuant to Section 17922 as it determines, pursuant to the provisions of Section 17958.7, are reasonably necessary because of local climatic, geological, or topographical conditions.  [¶] For purposes of this subdivision, a city and county may make reasonably necessary modifications to the requirements, adopted pursuant to Section 17922, contained in the provisions of the code and regulations on the basis of local conditions."  (§ 17958.5; emphases added.)

While it may appear at first glance that subdivision (a) of section 17958.5 would enable a city or county to impose stricter building standards than those adopted by the State Fire Marshal if called for by the particularities of local climatic, geological, or topographic conditions[10], when one follows through to examine the sections referred to in the subdivision, one sees that it does not.

Subdivision (a) of section 17958.5 authorizes cities and counties (i) in adopting ordinances or regulations pursuant to Section 17958, (ii) to make changes in the requirements contained in the provisions of the State Building Standards Code and the other regulations adopted pursuant to section 17922.  Section 17958, we recall, provides that cities and counties must adopt the state building standards promulgated pursuant to section 17922 within their respective jurisdictions within 180 days, lest they be made applicable in them by operation of law.  But it also provides that those local agencies may (i) make changes in those standards if that would impose "the same requirements" as would have been imposed by them, and (ii) that they may change or modify the state standards if found to be necessary because of local climatic, geological, or topographical conditions.  (See fn. 6, *ante*.)

---

[8]As originally enacted, section 17958.5 simply provided that "[i]n adopting the ordinances or regulations pursuant to Section 17958, a city or county may make such changes or modifications in the requirements contained in regulations adopted pursuant to Section 17922 as it determines are reasonably necessary because of local conditions."  (Stats. 1970, ch. 1436, p. 2758, § 4.)

[9]The limitation was based on an Opinion we had issued in 1974 in which we said that the bare phrase "local conditions" could not include political, economic or social phenomena, lest it destroy any possibility of statewide uniformity in building codes, and so we concluded that the term referred "only to conditions which may be labeled broadly as geographical or topographical."  (57 Ops.Cal.Atty.Gen. 443, 445 (1974).)  We iterated that observation three years later and further discussed its ramifications vis-à-vis the powers of the Commission on Housing and Development.  (See 60 Ops.Cal.Atty.Gen. 234, 235-239, *supra*.)

[10]For example, under the subdivision, a city or county could prohibit the use of materials, appliances, installations, devices, arrangements, or methods of construction.  (§ 17922, subd. (e).)

The problem with using sections 17958 and 17958.5 as authority for cities or counties to adopt more stringent building standards, albeit for limited reasons, than those adopted by the State Fire Marshal, is that both sections refer exclusively to building standards (or other regulations) <u>adopted pursuant to section 17922</u>, but that section, as seen, deals only with building standards adopted by the Department of Housing and Community Development and not those of the State Fire Marshal. Since section 17922 does not purport to deal with building standards adopted by the State Fire Marshal, neither could section 17958 which refers to it, nor section 17958.5 which refers to the latter in turn. Accordingly, neither section 17958 nor section 17958.5 could provide authority for cities and counties to adopt stricter building standards than those adopted by the State Fire Marshal.

C. <u>Section 17958.7.</u> Section 17958.7 prescribes the express finding that a city or county must make before modifying state building standards under section 17958.5:

"(a) Except as provided in Section 17922.6, the governing body of a city or county, <u>before making any modifications or changes pursuant to Section 17958.5</u>, shall make an express finding that such modifications or changes are reasonably necessary because of local climatic, geological or topographical conditions. Such a finding shall be available as a public record. A copy of such findings, together with the modification or change expressly marked and identified to which each such finding refers, shall be filed <u>with the department</u>. No such modification or change shall become effective or operative for any purpose until <u>the finding and the modification or change have been filed with the department</u>.

"(b) <u>The department</u> may reject a modification or change filed by the governing body of a city or county if no finding was submitted." (§ 17958.7; emphases added.)

The problem with viewing section 17958.7 as authority for a local agency to make changes in building standards adopted by the State Fire Marshal is that it refers to modifications or changes a city or county would make pursuant to section 17958.5, but as we have just shown that section applies only to changing the building standards of the Department of Housing and Community Development and not those of the State Fire Marshal. Indeed, the correctness of our perception is confirmed by the requirement of section 17958.7 for any such changes to be approved by "the department."[11] Thus, section 17958.7 would not authorize cities or counties to adopt more stringent building standards than those adopted by the State Fire Marshal.

It has been suggested that the section may do so indirectly because of a recent amendment to section 18941.5 of the State Building Standards Law. That section was amended last year (Stats. 1988, ch. 1302, p. [3314], § 1) and now reads as follows:

"(a) The building standards contained in [the various Uniform Codes] as referenced in the State Building Standards Code shall apply to all occupancies throughout the state and shall become effective 180 days after publication in the State Building Standards Code by the State Building Standards Commission.

---

[11]The procedural requirement for the making of findings and for filing with the Department were apparently intended "as a deterrent to the excessive adoption of changes or modifications." (57 Ops.Cal.Atty.Gen. 443, 445, *supra*, citing Stats. 1970, ch. 1436, p. 2786, § 7; see also 60 Ops.Cal.Atty.Gen. 234, 237, *supra*; 55 Ops.Cal.Atty.Gen. 157, 162, *supra*.)

"(b) Amendments, additions, and deletions to the State Building Standards Code adopted by a city, county, or city and county pursuant to subdivision (c) or pursuant to Section 17958.7, together with all applicable portions of the State Building Standards Code, shall become effective 180 days after publication of the State Building Standards Code by the State Building Standards Commission.

"(c) Neither the State Building Standards Law . . . nor the application of building standards contained in this section, shall limit the authority of a city, county or city and county to establish more restrictive building standards reasonably necessary because of local climatic, geological, or topographical conditions. The governing body shall make the finding required by Section 17958.7 and the other requirements imposed by Section 17958.7 shall apply to that finding." (Emphasis added.)

The suggestion is that under subdivision (c) a city or county could adopt a more restrictive building standard than one adopted by the State Fire Marshal and published in the State Building Standard Code, if it properly makes a finding under section 17958.7 that such is "reasonably necessary because of local climatic, geological or topographical conditions."

We reject the suggestion. Subdivision (c) of section 18941.5, as amended, does not provide an independent grant of authority for cities and counties to act. Rather, it speaks in negative terms of not limiting the authority of those local entities to establish more restrictive building standards because of the existence of local climatic, geological, or topographical conditions. The grant of such "authority" must therefore be found elsewhere, and it is -- in sections 17958.5 and 17958.7 of the State Housing Law. But once so found, the measure of the authority of cities and counties to act under those sections is defined by their terms, and they, as just shown, do not reach building standards adopted by the State Fire Marshal. Inasmuch as section 18941.5 does not independently grant authority to cities and counties to act, it would not permit those local jurisdictions to adopt more stringent building standards for their jurisdictions than those adopted by the State Fire Marshal.

To summarize our answer to the first question then: Since section 17922 of the State Housing Law does not deal with building standards adopted by the State Fire Marshal, neither it, nor sections 17958.5 and 17958.7 which are predicated upon it, can authorize a city or county to adopt more stringent building standards relating to fire and panic safety than those adopted by the State Fire Marshal. Again though, this answer is confined by the parameters of the opinion request and relates solely to those three specific sections about which we were asked.

2. Fire Protection Districts Adopting A Fire Prevention Code Or Ordinances With Building Standards That Are More Stringent Than Those Adopted By The State Fire Marshal And Contained In The State Building Standards Code.

Unlike cities and counties, fire protection districts are not granted broad police power authority by the state Constitution. (Cf., *Moore* v. *Municipal Court* (1959) 170 Cal.App.2d 548, 555; 68 Ops.Cal.Atty.Gen. 225, 229 fn. 3.) They are creatures of statute, which serves to define their powers and duties. (Cf., 68 Ops.Cal.Atty.Gen. at 228; 25 Ops.Cal.Atty.Gen. 234, 235 (1955); 10 Ops.Cal.Atty.Gen. 47, 48 (1947).)

Fire protection districts are presently organized under the Fire Protection District Law of 1987 (div. 12, pt. 3, § 13800 et seq.).[12] That Law gives them authority:

-- to adopt ordinances (§ 13861, subd. (h));

-- to adopt a fire prevention code by reference, in the manner that counties and cities do (§ 13869); and

-- to establish rules and regulations relating to furnishing fire protection and other services relating to the protection of lives and property (§ 13861, subd. (i); § 13862, subds. (a),(f)).[13]

Would these grants of authority, either singularly or in combination, authorize a fire protection district to adopt a fire protection code or regulations with building standards that were more stringent than those of the State Fire Marshal? We believe not.

As we saw in answering the first question, the State Housing Law presently preëmpts all local regulation of building standards except as the Legislature may permit in certain areas. As

---

[12]In 1987 the Legislature repealed the Fire Protection District Law of 1961 (Stats. 1961, ch. 565, § 1; div. 12, pt. 2.7, § 13801 et seq.) and succeeded it with the Fire Protection District Law of 1987. (Stats. 1987, ch. 1013 [SB 505, Bergeson], §§ 10, 11.) For the most part, any fire protection district organized or reorganized under the former Law "remain[s] in existence as if it had been organized pursuant to the [new one] . . . ." (§ 13803, subd. (a).) An excellent explanation of the new Fire Protection District Law is found in A New Law For A New Mission (Senate Bill 515 and the "Fire Protection District Law of 1987") [cited hereinafter as A New Law] that was prepared by the Senate Committee on Local Government in October 1987.

[13]Section 13861 currently describes the general powers of the Districts, providing in part as follows:

"A district shall have and may exercise all rights and powers, express or implied, necessary to carry out the purposes and intent of this part, including, but not limited to the following powers:

"(h) To adopt ordinances following the procedures of Article 7 (commencing with Section 25120) of Chapter 1 of Part 2 of Division 2 of Title 3 of the Government Code. [Cf., former §§ 13869, 13870, 13871.]

"(i) To establish and enforce rules and regulations for the administration, operation, and maintenance of the services listed in Section 13862." [Cf., former § 13852, subd. (d).]

Among the services listed in section 13862 is that of providing "fire protection services (*id*., subd. (a)), as well as a general one to provide "[a]ny other services relating to the protection of lives and property." (*Id*., subd. (f).)

Section 13869 specifically empowers Fire Prevention Districts to "adopt a fire prevention code by reference" as cities and counties do under the Government Code (§ 50022.2). (§ 13869 [former § 13871].) When they do so, the District's board is "deemed a legislative body and the district . . . deemed a local agency." (§ 13869.)

we also saw in that Law, the Legislature has specifically permitted cities and counties to adopt local building standards which diverge from the state standards in certain areas because of local conditions. (§§ 17958.5, 17958.7.) But as we have shown, that limited grant of authority does not permit those local agencies to adopt more stringent building standards relating to fire and panic safety than those which are adopted by the State Fire Marshal. The authority for fire protection districts to do so is even more attenuated because the Legislature has not accorded them a similar limited authority to adopt building standards which diverge from the state's standards.[14] Indeed, as we said in a recent opinion, we knew of nothing in the State Housing Law that would confer discretionary authority upon fire protection districts to adopt stricter building standards than are found therein. (*Id*., at 228, 229.)

Could such authority be found in the Fire Protection District Law itself? There we have seen that fire protection districts are granted authority to adopt ordinances (§ 13861, subd. (h)), to adopt a fire prevention code by reference (§ 13869), and to establish rules and regulations relating, *inter alia*, to furnishing fire protection and other services (§ 13861, subd. (i); § 13862, subds. (a),(f)). The Legislature has declared the local provision of fire protection services to be "critical to the public peace, health, and safety of the state" (§ 13801) and the Fire Protection District Law to be "necessary for the public, health, safety, and welfare" (§ 13804). Accordingly, the Legislature has said that the Law "shall be liberally construed to effectuate its purposes. (*Ibid*.) (Cf., A New Law, *op.cit.supra*, at 25; 68 Ops.Cal.Atty.Gen. 225, 228, *supra*.)

However, the foregoing grants of authority to fire protection districts in the Fire Protection District Law of 1987 are general and are controlled by the more specific provisions of the State Housing Law. (*Danville Fire Protection Dist.* v. *Duffel*, *supra*, 58 Cal.App.3d 241, 247; 68 Ops.Cal.Atty.Gen. 226, 228-229, *supra*.)

In *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.*, *supra*, 58 Cal.App.3d 241, it was held that a fire protection district could not adopt an ordinance under former section 13869 [now § 13861, subd. (h)] to require certain heat and smoke detector alarm systems and fire sprinkler systems to be installed in specific types of new buildings because the requirements of such were more stringent than what was required by the State Housing Law. (*Id*., at 243, 246-247.) The basis for the ruling was that "the fire protection requirements of the district were void as the field was totally preempted by the State Housing Law." (*Id*., at 244.) Indeed, the court specifically said that although the authority of a Fire Protection District to "adopt and enforce reasonable ordinances for the prevention and suppression of fires and conflagrations and for the protection and preservation of life and property against the hazards of fire and conflagration"

---

[14]Again, the "specific and entire" reservation to "local jurisdiction" of the right to regulate "local zone use requirements, local fire zones, building setback, side and rear yard requirements, and property line requirements" that is found in section 17922, subdivision (b) would not provide a fire protection district with authority to adopt building standards which are more stringent than the state's. Even assuming that a fire protection district would be considered a "local jurisdiction" within the meaning of that subdivision, its "limited grant of reserved power . . . is by implication a denial of the grant of any greater jurisdiction" (*Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.*, *supra*, 58 Cal.App.3d 241, 247), and we have seen how the reserved areas cover zoning matters and not building standards.

(former § 13869) was broad, it was also general and controlled by the more specific provisions of sections 17922, 17958, and 17958.5 of the State Housing Law. (*Id*., at 247.)[15]

In 68 Ops.Cal.Atty.Gen. 226, *supra*, we similarly concluded that the more specific provisions of the State Housing Law controlled over the authority of fire protection districts to adopt ordinances, so that despite the language of section 13869, a fire protection district did not have the authority to adopt an ordinance requiring the installation of a water reservoir at the time of construction of new buildings in the district, because that would impose a more stringent standard than the fire suppression and water delivery requirements of the State Housing Law. (*Id*., at 228.) In fact, in that opinion we went further and said that the authority of fire protection districts to adopt ordinances "must be limited . . . to those ordinances not in conflict with any other state law." (*Id*., at 229.)[16]

What is true of the authority of fire protection districts to adopt ordinances (§ 13861, subd. (h)), would be equally true of its authority to establish rules and regulations relating to fire protection and other services (§§ 13861(i), 13862(a)(f)). Both grants of authority would be subject to the more specific provisions of the State Housing Law.

The legislative history of the Fire District Protection Law of 1987 convinces us that the Legislature never intended fire protection districts to be able to adopt ordinances setting forth building standards stricter than those of the state. As the Bill which enacted that Law (SB 515) traveled through the legislative process, it was amended several times. As originally introduced, and prior to amendments made on April 20, 1987, section 13861, which defines the powers of a fire protection district, contained a subdivision to include among those powers, one "[t]o adopt ordinances pursuant to Section 17958." At the request of the California Building Industry Association, the author of the legislation requested an opinion of Legislative Counsel as to whether that would increase the authority of fire prevention districts. Legislative Counsel rendered an opinion on April 3, 1987 (# 7483) answering in the affirmative, saying that the subdivision would increase the existing authority of fire protection districts by allowing them to adopt their own, more stringent building codes. Opposition from the California Building Industry Association led to the deletion of the subdivision from the Bill. (See, A New Law, *op. cit. supra*, at pp. 7, 26.)

"The courts have repeatedly concluded that when the Legislature has rejected a specific provision which was part of an act when originally introduced, the law as enacted should not be construed to contain that provision. [Citations.]" (*Ventura* v. *City of San Jose* (1984) 151 Cal.App.3d 1076, 1080.) It will be recalled that section 17958 authorizes cities and counties, (i) to make changes in state building standards in applying them to their respective jurisdictions as long

---

[15]It is interesting to note that the present authority for fire protection districts "to adopt ordinances" (§ 13861, subd. (h)) is even more broadly and more generally stated than was their prior "ordinance authority" which was found to be preëmpted by state law in *Danville*.

[16]See also, 61 Ops.Cal.Atty.Gen. 61, 63-68 (1978), wherein we concluded that despite the broad language of former section 13869, a fire protection district had no authority to prohibit the sale of fireworks in the district because it would conflict with the specific and controlling provisions of the State Fireworks Law; and 10 Ops.Cal.Atty.Gen. 47, 48, *supra*, where we concluded that notwithstanding the broad language of former section 14460, which provided that a district could adopt such ordinances or resolutions as it deemed proper to prevent fires or conflagrations, a fire protection district was prohibited from adopting an ordinance requiring the installation of a 25,000 gallon water reservoir at recreational vehicle campsites, along with associated equipment, because state law had preëmpted the field of automobile and trailer camp regulation.

as they impose the same requirements as those adopted by the Department of Housing and Community Development, or (ii) to make changes or modifications in those requirements for local climatic, geological or topographical reasons. What the aforegoing legislative history teaches, is that the Legislature rejected the suggestion that fire protection districts be authorized to alter state building standards adopted under the State Housing Law at all. That would certainly mean that the Legislature did not intend fire protection districts to adopt more stringent building standards than the those of the State. (See also, Stats. 1988, ch. 1302, § 1, *supra*, amending § 18941.5.)

As we said earlier, "[w]hat cities and counties may regulate with regard to building construction standards . . . must be distinguished from the responsibilities of fire protection districts under the State Housing Law." (68 Ops.Cal.Atty.Gen. 226, 228, *supra*.) That Law imposes upon the chief of any fire department or district providing fire protection services, and their authorized representatives, the duty of enforcing in their respective areas "all of those provisions of [the State Housing Law]." (§ 17962; cf., § 17966; 69 Ops.Cal.Atty.Gen. 260, 263-265 (1986).) That would include an obligation to enforce the state building standards relating to fire and panic safety promulgated by the State Fire Marshal (as well as those of the Department of Housing and Community Development) and published in the State Building Standards Code. It would also include the obligation to enforce any city or county code because the adoption of those local codes is specifically compelled by provisions of the State Housing Law. (§ 17958.)

Accordingly, we conclude that a fire protection district may not adopt more stringent building regulations than those of the State Fire Marshal.

* * * * *